# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

EGYPT HOUSE,

                Plaintiff,

        v.

JOHN P. KELLEY, et al.,

                Defendants.

CIVIL ACTION NO. 25-CV-10597

## DEFENDANT CHAIRMAN DEFRANCSICO'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Egypt House purports to be a religious organization and sought a tax exemption from a local board of assessors under G.L. c. 59, § 5 (Clauses Tenth and Eleventh). When the local board denied that exemption, Plaintiff appealed to the Massachusetts Appellate Tax Board (ATB), a state tribunal that adjudicates appeals of state tax issues from the Commonwealth's 351 cities and towns, as well as the Massachusetts Department of Revenue. During discovery in the ATB proceedings, the local assessors requested to inspect the property for which Plaintiff sought an exemption, ostensibly to gather evidence about whether the property is truly used and occupied as required by the exemption. Although such an inspection is both standard practice in ATB proceedings and required by state statute, Plaintiff objected, arguing the inspection was requested only to harass Plaintiff. But because Plaintiff's objections were based neither in law nor discernible fact, the ATB ordered Plaintiff to allow the inspection. Plaintiff now asks this Court to enjoin the order of the ATB's Chairman, arguing it violates Plaintiff's First Amendment and Fourteenth

1

Amendment rights.

This Court should deny Plaintiff's motion, both because it is jurisdictionally barred and because Plaintiff's constitutional claims are meritless.  For one, the Federal Courts Improvement Act of 1996 expressly prohibits injunctive relief against any "judicial officer," and ATB Chairman DeFrancisco is such a judicial officer.  42 U.S.C. § 1983.  Additionally, *Younger* doctrine, which provides that federal courts should generally not enjoin ongoing state-court proceedings, independently bars relief.  Moreover, Plaintiff's Complaint fails to state any viable First Amendment or Fourteenth Amendment claim.  Although Plaintiff makes various vague assertions that the inspection is offensive to Plaintiff's religious practices (though Plaintiff never clearly explains why), the inspection order is required by a facially neutral and generally applicable law, and it is thus subject to rational-basis review, which it passes.

I.    **BACKGROUND**

A.    **The Appellate Tax Board (ATB)**

The Appellate Tax Board (ATB) is a tribunal within Massachusetts's Executive Office of Administration and Finance.  *See* G.L. c. 58A, § 1 (establishing ATB).  The ATB has "jurisdiction to decide appeals" under the provisions of various Massachusetts tax laws, and parties may petition the ATB to review decisions of local boards of assessors regarding tax abatements.  G.L. c. 58A, § 6.  During ATB proceedings, parties may conduct various discovery of the type typically available in trial courts, and the proceedings culminate with a hearing and written decision by the ATB.  G.L. c. 58A, §§ 11, 13.  ATB decisions are then subject to appellate review by the Massachusetts Appeals Court, which are in turn subject to appellate review by the Massachusetts Supreme Judicial Court. G.L. c. 58A, § 13.  Defendant Mark DeFrancisco is the current Chairman of the ATB.

**B.    Plaintiff's Appeal To The ATB And The Challenged Inspection**

On June 3, 2024, Plaintiff Egypt House filed a petition with the ATB, appealing a decision by the Board of Assessors of the Town of Marblehead ("Assessors") that denied Plaintiff a tax abatement for certain real estate in Marblehead. *See* Ex. 1 (Egypt House ATB Petition). According to the petition, Plaintiff is entitled to an abatement for its Marblehead property because the property "is used as a house of worship, parsonage, lodging for pilgrims, and reading room for the Orthodox Christian church." Ex. 1 (Egypt House ATB Petition) at 2. The petition further alleged that the exemption denial "is part of a pattern of Town of Marblehead officials who are averse to the religious expression of Orthodox Christians in the Town of Marblehead." Ex. 1 (Egypt House ATB Petition) at 2-3.

On November 20, 2024, the Assessors filed a motion with the ATB to compel Plaintiff to allow an inspection of the property subject to Plaintiff's ATB appeal, asserting that Plaintiff had refused an inspection unless the Assessors agreed to various conditions, including that the inspection be conducted exclusively by "certified assessor[s] . . . for the Town of Marblehead" (i.e., excluding the Assessors' attorneys) and that no photographs be taken. Ex. 2 (Assessors' Motion to Compel) at 1–2. The Assessors' motion pointed out (*id.* at 2) that such an inspection is provided for by state statute, which expressly allows the ATB-appellee's attorneys to attend: under G.L. c. 58A, § 8A, "an appellant [in ATB proceedings] shall permit the appellee personally or by attorneys, experts or other agents, to enter upon such real estate . . . and examine and inspect such real estate."

Plaintiff opposed the motion, alleging that the Assessors wanted to perform the inspection only to "annoy, harass, oppress, and intimidate Egypt House." Ex. 3 (Egypt House Opposition) at 1–2. Although it appeared from the Assessors' motion that Plaintiff had at least been willing to provide an inspection on specified conditions, Plaintiff asked the ATB in its opposition to altogether

"refrain from compelling Egypt House to allow the . . . inspection to go forward," positing that it was a "ruse by the Town of Marblehead to shame, disrespect, and discredit the Orthodox Catholic faith." Ex. 3 (Egypt House Opposition) at 7. Although the specific legal basis for that request was not entirely clear, Plaintiff's opposition asserted that the First Amendment required the Assessors to employ the "least restrictive means [available] to confirm the religious use of Egypt House." Ex. 3 (Egypt House Opposition) at 4–5. However, the opposition did not identify any specific religious practice or belief that would be offended by the inspection. Ex. 3 (Egypt House Opposition) at 2–6.

Plaintiff's opposition further argued, in the alternative, that if the inspection was allowed, it should be subject to various conditions, including that Plaintiff be authorized to "prohibit the admission of any person who is not a certified assessor in and for the Town of Marblehead" and that photographs be prohibited. Ex. 3 (Egypt House Opposition) at 7. But the opposition provided essentially no explanation for why those conditions might be warranted in light of any particular religious doctrine or practice; instead, the only apparent support was Plaintiff's highly generalized allegations that the Assessors and the Town of Marblehead had persecuted Plaintiff. Ex. 3 (Egypt House Opposition) at 7 ("It is our belief that allowing those who have defamed Egypt House, its ministry, or its principals to enter into the property is in itself a desecration, a further attack upon the good and holy work performed and to be performed therein.").

On January 7, 2025, the ATB granted the Assessors' motion, and the order rejected the conditions that Plaintiff had requested. *See* Ex. 4 (January 7, 2025 ATB Order). However, the order provided that the Chairman of the ATB, Defendant Chairman DeFrancisco, in an attempt to minimize or avoid conflict, would attend the inspection to resolve any disputes that arise, including any disputes about whether certain photographs could be taken. *See* Ex. 4 (January 7, 2025 ATB

Order) at 1.

On January 15, 2025, Plaintiff filed a motion for reconsideration. *See* Ex. 5 (Motion for Reconsideration). Although the original motion had not offered any particular religious reasons the inspection was problematic or that Plaintiff's conditions were warranted, the motion for reconsideration vaguely alleged "ecclesiastical reasons" that warranted "a prohibition on any type of recording . . . of icons, holy relics, and holy vessels located at Egypt House." *See* Ex. 5 (Motion for Reconsideration) at 6–7. Because the motion failed to articulate any tenable legal claim under the First Amendment or otherwise, because the inspection was required by statute, and because the Plaintiff's limiting demands were inconsistent with that statute, the ATB denied the motion for reconsideration on January 21, 2025. *See* Ex. 6 (January 21, 2025 ATB Order); DeFrancisco Decl. ¶¶ 5–10.

### C. Plaintiff's Efforts To Obtain Relief From Other Courts And The Current Status Of The Inspection

On February 7, 2025, Plaintiff filed an emergency motion for a preliminary injunction, seeking to halt the inspection, with the Massachusetts Supreme Judicial Court. Ex. 7 (SJC Motion). For procedural reasons, the SJC denied that motion on February 20, 2025. Ex. 8 (SJC Order). Although ATB decisions may be appealed to the Massachusetts Appeals Court, *see* G.L. c. 58A, §13, there is no right to an interlocutory appeal from the ATB to Massachusetts's highest court. Following the SJC's denial of Plaintiff's requested injunction, the ATB scheduled the inspection for April 1, 2025.

However, several weeks before that inspection was set to occur, Plaintiff filed this lawsuit on March 12, 2025, alleging that Chairman DeFrancisco and various other parties connected to the Assessors had violated Plaintiff's First Amendment and Fourteenth Amendment rights, and seeking

5

relief under 42 U.S.C. §§ 1983 and 1985.[1]  *See generally* Compl.  Plaintiff also filed the instant motion, asking this Court to enjoin various aspects of the inspection, including prohibiting the Assessors from taking pictures during the inspection and barring certain individuals from attending, such as the Assessors' attorneys.  Motion for a Preliminary Injunction, Dkt.5 (Mar. 13, 2025) ("PI Mot.").  Plaintiff's supporting memorandum echoes many of the allegations from its briefing before the ATB, including assertions that Plaintiff will be irreparably harmed by the inspection because "[a]llowing persons to enter Egypt House who have illegally defamed and discredited the faith … is, in and of itself, a desecration."  Memorandum in Support of Motion for Preliminary Injunction, Dkt. 6, at 8 (Mar. 13, 2025) ("Plaintiff's Br.").

After Plaintiff filed this action, Plaintiff filed with the ATB a motion to stay the April 1 inspection.  Given that this Court set a hearing on Plaintiff's motion for April 10, the ATB temporarily stayed the April 1 inspection.  DeFrancisco Decl. ¶ 11.

## II.    LEGAL STANDARD

"To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest."  *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015).  "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor."  *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st

---

[1] Plaintiff also includes a claim under G.L. c. 12, § 11I, which creates a state-law cause of action for constitutional violations.  Compl. ¶ 39.  The underlying constitutional violations Plaintiff alleges are the same for that cause of actions as for Plaintiff's claims under §§ 1983 and 1985— i.e., alleged violations of the First Amendment and Fourteenth Amendment—so that claim fails for the same reasons as the federal causes of action.

Cir. 2006).

## III.    ARGUMENT

Plaintiff's motion should be denied: (A) injunctive relief against Chairman DeFrancisco is barred by statute because he is a "judicial officer" within the meaning of 42 U.S.C. § 1983; (B) *Younger* abstention independently bars Plaintiff's requested relief; (C) Plaintiff has failed to demonstrate a likelihood of success on the merits; (D) Plaintiff has failed to show irreparable harm, and the balance of the equities does not favor Plaintiff; and (E) an injunction would not be in the public interest.

### A.    Injunctive Relief Against Chairman DeFrancisco Is Barred By Judicial Immunity, Pursuant To The Federal Courts Improvement Act Of 1996.

Plaintiff's request for injunctive relief against Chairman DeFrancisco must be denied because the Federal Courts Improvement Act of 1996 ("FCIA") prohibits it.  Under 42 U.S.C. § 1983, as amended by the FCIA, "injunctive relief shall not be granted" in "any action brought against a judicial officer" based on acts "taken in [the] officer's judicial capacity."  Pub. L. No. 104–317, § 309(c), 110 Stat. 3853 (codified as amended at 42 U.S.C. § 1983); *see also, e.g.*, *Nollet v. Justs. of Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000) (explaining that FCIA bars injunctive relief against state-court judges).

Chairman DeFrancisco is a "judicial officer" under the FCIA, notwithstanding that he is an officer of the Executive Branch, because he "perform[s] quasi-judicial functions."  *Crotty v. Massachusetts Parole Bd.*, No. CIV.A. 10-40245-FDS, 2012 WL 3628904, at *4 (D. Mass. Feb. 23, 2012) (holding FCIA entitles parole board members to absolute immunity from injunctive relief because they exercise "quasi-judicial functions"); *see also Phillips v. Conrad*, No. 10-40085-FDS, 2011 WL 309677, at *7–8 (D. Mass. Jan. 28, 2011) (explaining that "officers performing quasi-judicial functions within the scope of their official duties are treated like judges under the doctrine

of absolute immunity from damages" and that the FCIA treats them the same way for purposes of injunctive relief); *Loc. Union No. 12004, United Steelworkers Of Am. v. Massachusetts*, 377 F.3d 64, 75 n.9 (1st Cir. 2004) (noting that injunctive relief would be unavailable against commissioners of Massachusetts Commission Against Discrimination, an administrative agency).

That is, Chairman DeFrancisco "perform[s] functions essentially similar to those of judges . . . , in a setting similar to that of a court." *Bock v. Sloane*, 675 F. Supp. 3d 176, 181 (D. Mass. 2023) (quoting *Bettencourt v. Bd. of Registration in Medicine of Com. of Mass.*, 904 F.2d 772, 782–84 (1st Cir. 1990)).  His role as Chairman includes the adjudication of "appeals" from decisions of boards of assessors, G.L. c. 58A, § 6, which entails administering discovery, G.L. c. 58A, §§ 8A, 11; "summon[ing] witness[es]" for testimony at "hearings," G.L. c. 58A, § 11; "mak[ing] findings of fact," G.L. c. 58A, § 13; "mak[ing] . . . decision[s]," *id.*; and issuing "opinion[s]," id. And just like the decisions of Massachusetts trial courts, decisions he issues are subject to appellate review by the Massachusetts Appeals Court.  *See* G.L. c. 58A, § 13.  These characteristics are quintessentially judicial.  *Cf., e.g.*, *Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S. 117, 121 (1926) (concluding that the duties of the federal Board of Tax Appeals is "quasi judicial [in] nature," including because it holds hearings, makes findings of fact, and issues decisions).

Further, Plaintiff's claim for injunctive relief exclusively concerns actions Chairman DeFrancisco has taken or may take in his "judicial capacity."  42 U.S.C. § 1983.  That is, Plaintiff seeks to enjoin him from "allowing a[n] . . . inspection" of Plaintiff's property and from allowing various actions entailed by that inspection, such as taking photographs of the property.  *See* Motion for Preliminary Injunction, Dkt. 5, at 2 (Mar. 13, 2025).  That inspection would be conducted pursuant to G.L. c. 58A, § 8A, which not only authorizes, but requires, the ATB to permit such an inspection as part of the ATB's standard discovery procedure.  It is thus indisputably within the

scope of Chairman DeFrancisco's role at the ATB.

Finally, Plaintiff does not make any allegations that would implicate either of the FCIA exceptions, i.e., that "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also, e.g.*, *Hatton v. Combs*, 793 F. App'x 801, 803 (10th Cir. 2019) (concluding FCIA exceptions did not apply because plaintiff "did not allege that defendants violated a declaratory judgment or that declaratory relief was unavailable").

###    B.    *Younger* Abstention Precludes Injunctive Relief.

*Younger* abstention also independently bars injunctive relief. Under that doctrine, a federal court generally must not enjoin ongoing state-court proceedings, including certain "state administrative proceedings," as violative of federal law. *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191–93 (1st Cir. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)). That rule governs here.

A federal court employs a "three-step approach" to determine whether it should abstain under *Younger*: (1) it "must ascertain whether a particular state proceeding falls within the *Younger* taxonomy," i.e., whether the state proceedings fit one of the enumerated categories of cases to which *Younger* applies; (2) if so, "the court must then take the second step and consider whether the *Middlesex* factors support abstention"; and (3) the federal court must determine whether any of the "exceptions to the *Younger* doctrine apply." *Sirva Relocation*, 794 F.3d at 192–93. Those steps lead to the conclusion that this Court should abstain.

*First*, the ATB order "falls within the *Younger* taxonomy." *Id.* That taxonomy encompasses (a) "state criminal prosecutions," (b) "civil enforcement proceedings," and (c) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Here, the ATB

inspection order fits at least that last category because it is an "order[] … uniquely in furtherance of" the ATB's "ability to perform [its] judicial functions." *Id.* That category includes orders relating to "the administration of a State's judicial system," such as court orders that address a party's refusal to comply with a court-sanctioned subpoena, *Juidice v. Vail*, 430 U.S. 327, 336 (1977), or a party's refusal to provide other discovery, *Tilton v. Smith*, 827 F. Supp. 404, 408 (N.D. Tex. 1993) (dismissing First Amendment claim by church seeking to enjoin state-court order that required church to produce various documents); *see also, e.g.*, *Fischman v. Murphy*, No. 21-2326, 2022 WL 4479523, at *2 (2d Cir. Sept. 27, 2022) (dismissing federal action seeking to enjoin contempt proceedings arising from plaintiff's "repeated failures to comply with state-court orders directing her to produce documents and appear for depositions," as "the exercise of federal jurisdiction under these circumstances would impede 'the state courts' ability to perform their judicial functions'" (cleaned up)); *Ponder v. Huff*, No. 2:10CV112-MHT, 2010 WL 2367300, at *2 (M.D. Ala. May 12, 2010) (dismissing complaint under *Younger* because it "specifically requests interference with the orders of a state court . . . related to . . . discovery").

Like other orders enforcing discovery obligations that are subject to *Younger*, the type of inspection ordered by the ATB is fundamental to the administration of the ATB's functions. That is demonstrated in part by the fact that the ATB's enabling statute makes the inspection mandatory in any tax-abatement proceedings where an appellee requests it. *See* G.L. c. 58A, § 8A ("Before the hearing of a petition for the abatement of a tax upon real estate . . . , the appellant shall permit the appellee personally or by attorneys, experts or other agents, to enter upon such real estate . . . and examine and inspect such real estate"). In fact, the ATB is statutorily authorized to "dismiss the appeal" if an "appellant refuses to permit the appellee to inspect [the subject] property." *Id.* That is because disputes over tax abatements frequently depend on details about how property is being used,

particularly in appeals concerning tax exemptions, where the use and occupancy of the property at issue is a critical factor in determining the property's qualification for the exemption. *See* DeFrancisco Decl. ¶ 7. For example, if an ATB-appellant seeks a religious exemption on real estate, that exemption may depend on detailed nuances about the use of the property. *See, e.g.*, *Shrine of Our Lady of La Salette Inc. v. Bd. of Assessors of Attleboro*, 476 Mass. 690, 697–702 (2017) (evaluating whether portions of religious organization's property were entitled to tax exemption for religious use, and concluding that a "maintenance building" was tax-exempt but that "safe house" was not, because the predominant purpose of the maintenance building was to store materials connected to religious worship, while the safe house predominantly served the religious organization's charitable missions). Accordingly, an order compelling an inspection where an ATB-appellant has refused to accommodate one is the type of order that "vindicates the regular operation" of the ATB, and thus, is subject to *Younger*. *Juidice*, 430 U.S. at 335.

**Second**, the *Middlesex* factors support abstention. There is an "ongoing state proceeding that is judicial in nature." *Sirva Relocation*, 794 F.3d at 196. That is demonstrated by the fundamental nature of ATB proceedings, which bear the trappings of typical judicial process, such as a petition to initiate adjudication, discovery, factual findings, witness testimony, a hearing, and a decision subject to appellate review. *See supra* at pp. 7–8; *Sirva Relocation*, 794 F.3d at 196 (concluding that MCAD proceedings were judicial in nature, as they involved "a formal complaint, . . . a pre-hearing conference, and . . . an adjudicative hearing"). The proceedings also "implicate[] important state interests," *id.*, which are Massachusetts's interests in the just administration of tax collection, *see, e.g.*, *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (dismissing complaint under *Younger* because it sought to enjoin "state proceedings . . . implicat[ing] important state interests relating to state taxes"); *Winningham v. Phillips*, No. 4:24-CV-0881-O-BP, 2025 WL

582163, at *6 (N.D. Tex. Feb. 6, 2025) ("[A]d valorem taxes and liens to collect those taxes are important state interests."). And finally, there is "an adequa[te] … opportunity to raise federal defenses in the state proceeding," *Sirva Relocation*, 794 F.3d at 196, as the ATB may properly consider constitutional issues, *cf. e.g.*, *New Bedford Gas & Edison Light Co. v. Bd. of Assessors of Dartmouth*, 368 Mass. 745, 752 (1975) (explaining that a party appealing an ATB decision must raise a constitutional question before the ATB to preserve it for appeal).

*Third*, no exception to *Younger* applies. For instance, Plaintiff has not identified some ATB action that is "flagrantly and patently violative of express constitutional prohibitions." *Sirva Relocation*, 794 F.3d at 197. Indeed, the ATB's order merely follows its statutory mandate, which is facially neutral and generally applicable. *See infra* at pp. 13–16.

### C.    Plaintiff Has Failed To Demonstrate A Likelihood Of Success On The Merits.

Plaintiff has failed to demonstrate a likelihood of success on the merits. For one, Plaintiff's motion does not meaningfully analyze the merits of Plaintiff's claims, which is reason alone to deny the motion. And Plaintiff's Complaint does not state viable First Amendment or Fourteenth Amendment claims.

#### 1.    Plaintiff's Motion Does Not Meaningfully Address Likelihood Of Success On The Merits, And It Should Be Denied On That Basis Alone.

As a threshold matter, Plaintiff's motion should be denied for failure to even meaningfully explain why Plaintiff is likely to prevail on the merits. Plaintiff's motion does not even identify which of its claims would supposedly warrant injunctive relief, nor does Plaintiff offer any analysis of the merits of those claims. *See, e.g.*, *Mendez Internet Mgmt. Servs., Inc. v. Bankers Ass'n of Puerto Rico*, No. CV 09-1667 (FAB), 2010 WL 11565651, at *1 (D.P.R. Oct. 20, 2010) (denying injunction because "Plaintiffs have made no attempt to demonstrate to the Court that they have any likelihood of success on the merits of the claims alleged in the complaint, nor even indicated which

of those claims is tied to the injunctive relief requested.").

For instance, Plaintiff's motion does not even discuss the First Amendment or the Fourteenth Amendment—the bases for all of Plaintiff's claims—let alone analyze why the inspection Plaintiff seeks to enjoin would violate those rights. Plaintiff's Br. 7–8. Instead, Plaintiff merely (1) asserts in conclusory fashion that it is entitled to a tax exemption under Massachusetts law (an issue not before this Court); (2) fleetingly summarizes facts unrelated to the inspection Plaintiff seeks to enjoin (e.g., that the Assessors have supposedly failed to explain why Plaintiff is not entitled to a tax exemption); and (3) assert without explanation that "the background relative to this matter" and "[a] review of the relevant caselaw" (which Plaintiff does not identify) will support Plaintiff's claims. Plaintiff's Br. 8. Plaintiff has thus failed to carry its burden. *See Esso Standard Oil*, 445 F.3d at 18.

## 2.    Plaintiff's First Amendment Claims Are Without Merit.

Plaintiff's claims that the ATB's inspection order violates the First Amendment fail as a matter of law and are subject to dismissal at the pleadings stage. *See* Complaint ¶¶ 32, 36. Because the ATB ordered the inspection pursuant to a neutral and generally applicable statute, the ATB's actions are subject to rational-basis review, which the ATB's order passes.

Where a plaintiff challenges state action "that burdens religious exercise but that is neutral with respect to religion and generally applicable," a court reviews that action "only to ensure that it has a rational basis." *Brox v. Hole*, 83 F.4th 87, 93 (1st Cir. 2023). For a statute like G.L. c. 58A, § 8A to be neutral, it "may not single out religion or religious practice." *Id.* And to be "generally applicable," the law must not "invite[] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.*

13

Here, the inspection law at issue, G.L. c. 58A, § 8A, is facially neutral: it applies to any "hearing of a petition for the abatement of a tax upon real estate," without singling out any religion or religious practice.  It is also generally applicable because it does not provide a mechanism for individualized exemptions; on the contrary, it provides that an appellant "shall" permit an inspection, without authorizing the ATB to relieve an appellant of that obligation.  G.L. c. 58A, § 8A.

The ATB's challenged order merely follows the letter of that statutory provision.  Indeed, the order largely tracks the statutory text.  *Compare* Ex. 4 (Challenged ATB Order) ("In accordance with G.L. c. 58A, § 8A, the assessors and any attorneys, experts, or other agents may participate in the inspection of the subject properties, including the interiors of the subject properties[.]"), *with* G.L. c. 58A, § 8A ("[T]he appellant shall permit the appellee personally or by attorneys, experts or other agents, to enter upon such real estate . . . examine and inspect such real estate …..").  And it is not correct that, as Plaintiff suggests, the ATB acted outside the statute's mandate by rejecting Plaintiff's request that certain individuals, such as Defendant Matt Provencher, be excluded from the inspection, Compl. ¶ 32, or by allowing the Assessors to take pictures, Plaintiff's Br. 12.  The statute provides that "the appellant shall permit the appellee personally *or by attorneys*" to conduct the inspection, and it is consistent with that broad mandate to allow Mr. Provencher, one of the Assessor's attorneys, to attend.  G.L. c. 58A, § 8A (emphasis added).  The statute also requires that the Assessors be allowed to "examine and inspect" the real estate, which naturally entails creating records of the inspection, such as photographs—particularly given that the apparent purpose of the provision is to provide discovery that an appellee can use as evidence before the ATB.  G.L. c. 58A, § 8A.

Moreover, to the extent any aspects of the ATB's order are not strictly required by the statute, Plaintiff's First Amendment claim nevertheless is fated for dismissal because Plaintiff has not

14

plausibly alleged that Chairman DeFrancisco's challenged "conduct was undertaken *because of* [Plaintiff's] religious beliefs." *Swartz v. Sylvester*, 53 F.4th 693, 700 (1st Cir. 2022) (emphasis added). For instance, Plaintiff alleges that Chairman DeFrancisco somehow acted outside the statute's requirement by providing in the ATB's order that he would attend the inspection to resolve disputes, which was supposedly motivated by "a desire to intimidate, bully, and control Egypt House." Compl. ¶ 32. That allegation is false and is also legally insufficient, even if taken as true; Plaintiff fails to allege, either in its Complaint or its motion, that this purported "desire to control" Egypt House, Compl. ¶ 32, was driven by animus *for Plaintiff's religious beliefs*, which is what would be required for a First Amendment violation. *See Swartz*, 53 F.4th at 701. Plaintiff's allegation about this "desire to control" is also conclusory and speculative, unaccompanied by well-pleaded facts to support it, and thus cannot save Plaintiff's claims from dismissal. *See, e.g.*, *Swartz v. I.R.S.*, 187 F.3d 623, 1998 WL 1085785, at *1 (1st Cir. Sept. 22, 1998) (explaining "conclusory allegation of a . . . motive" is not sufficient to avoid dismissal). And in any event, Plaintiff's unsupported allegation is wrong: the ATB's order provides that Chairman DeFrancisco would attend, the ATB having determined that his presence would be helpful to resolve disputes that might arise at the inspection, given the contentious nature of the proceedings, and to help assuage Plaintiff's claimed concerns about intrusiveness on the part of the Assessors. DeFrancisco Decl. ¶ 6.

Moreover, given that the statute and its application are neutral and generally applicable, even if the inspection somehow conflicted with Plaintiff's religious practices, it would not be sufficient for Plaintiff to merely allege "incidental[] burdens [on] religious exercise." *Brox*, 83 F.4th at 93. But it is noteworthy that Plaintiff has not even made any clear allegation or explanation as to how the ordered inspection violates Plaintiff's religious beliefs. At most, Plaintiff makes vague assertions

that allowing the inspection without its requested conditions will somehow "defile" the space. Plaintiff's Br. 9. For instance, Plaintiff asserts that "handling of the holy objects, and the retention of any photographic image of a holy object destroys the holy nature of the space." *Id.* However, the ATB's order does not provide for "handling of . . . holy objects," and the assertion about photographic images causing harm is unconnected to any support or explanation about Plaintiff's religious practice. At bottom, Plaintiff's allegations predominantly center on its perception that the Assessors and their attorneys are somehow antagonistic to their religious beliefs, but even if that were true, it does not follow that allowing those individuals onto Plaintiff's property as part of routine discovery creates a First Amendment claim.

Accordingly, the ATB's order is subject to rational-basis review, which requires that it be sustained "if it is rationally related to a legitimate government interest." *Swartz*, 53 F.4th at 702–03. The ATB's order passes that low bar, as it is related to the state's interest in ensuring adequate discovery for the adjudication of disputes over tax abatements.

### 3.    Plaintiff's Fourteenth Amendment Claims Are Without Merit.

Plaintiff's claim that the inspection is a "violation of . . . equal protection" under the Fourteenth Amendment is also unlikely to succeed. Compl. ¶ 33.

To adequately state an equal protection claim under the Fourteenth Amendment, Plaintiff must show that, "compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as . . . religion." *Perrier-Bilbo v. United States*, 954 F.3d 413, 432 (1st Cir. 2020). However, Plaintiff makes no allegations whatsoever that the inspection is being conducted in a manner that deviates from how it would be conducted for any other party before the ATB—indeed, Plaintiff's Fourteenth Amendment claim includes no specific factual allegations to support it. Compl. ¶ 33. Instead, Plaintiff baldly alleges that the inspection

being conducted "without narrowly tailoring the guidelines . . . , given that the inspection site is a church," somehow violates the Fourteenth Amendment. Compl. ¶ 33. In other words, Plaintiff is *seeking different treatment* than other ATB parties would receive, not arguing that the ATB is "discriminating between individuals or groups." *Perrier-Bilbo*, 954 F.3d at 432. And Plaintiff could not make such an argument because, as explained above, the inspection is required by a facially neutral statute, and the ATB's inspection order merely follows that statutory mandate. *See supra* at pp. 13–16.

> **D.      Plaintiff Has Failed To Show A Likelihood Of Irreparable Harm, And Plaintiff Has Not Shown That The Balance Of The Equities Favors Plaintiff.**

Plaintiff has failed to show a likelihood of irreparable harm and has failed to show that the balance of the equities favors Plaintiff. As described above, Plaintiff has not articulated any concrete explanation as to how the inspection, conducted without Plaintiff's requested conditions, will burden Plaintiff's religious practices. *See supra* at pp. 15–16.

> **E.      Plaintiff Has Failed To Demonstrate That An Injunction Would Be In The Public Interest.**

The public has an interest in just and fair adjudication of disputes over tax exemptions, which affect the equitable distribution of tax burdens among the state's residents. *Cf. United States v. Lee*, 455 U.S. 252, 260 (1982) (explaining that there is a "broad public interest in maintaining a sound tax system . . . of . . . a high order"). As explained above, the inspection Plaintiff seeks to enjoin is central and routine discovery in disputes before the ATB, and it is important for the ATB's ability to fairly resolve the matters before it. *See supra* at pp. 10–11. Accordingly, hampering the inspection in the manner Plaintiff requests is not in the public interest.

## CONCLUSION

Plaintiff's motion for a preliminary injunction should be denied.

17

Respectfully submitted,

CHAIRMAN DEFRANCISCO,

By his attorneys:

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ *Aaron Macris*
Aaron Macris, BBO #696323
Assistant Attorney General
Office of the Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2987
Arron.Macris@mass.gov

April 4, 2025

<u>**CERTIFICATE OF SERVICE**</u>

I, Aaron Macris, hereby certify that that, on April 4, 2025, I caused this Memorandum in Opposition to be served through the Court's e-filing and service system to:

Tracey M.A. Stockton, Esq.
St. Paul's Foundation
124 Pleasant Street
Marblehead, MA 01945
Email: ts@stpaulsfoundation.org
*Counsel for Plaintiff Egypt House*

Leonard H. Kesten
Christina Bonelli
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street
Ste 12th Floor
Boston, MA 02110
Email: lkesten@bhpklaw.com
Email: nbonelli@bhpklaw.com
*Counsel for Defendants John P. Kelley, William J. Willis,*
*Jonathan Lederman, Todd Laramie, Karen Bertolino,*
*Michael Tumulty, Douglas E. Percy, Thatcher W. Kezer, III*

George C. Rockas
Anne V. Kim
Wilson, Elser, Moskowitz, Edelman & Dickler, LLP
260 Franklin Street
14th Floor
Boston, MA 02110
Email: george.rockas@wilsonelser.com
Email: anne.kim@wilsonelser.com
*Counsel for Defendants Lisa L. Mead, Adam J. Costa,*
*and Matthew D. Provencher*

/s/ *Aaron Macris*
Aaron Macris
Assistant Attorney General

Dated: April 4, 2025