**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EGYPT HOUSE,<br>    Plaintiff,<br><br>v.<br><br>JOHN P. KELLEY, *et al.,*<br>    Defendants. | )  Civil Action No.: 25-10597-BEM<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF SANCTIONS UNDER USCS FED RULES CIV PROC R 11**
**Defendants John Kelley, William Willis, Jonathan Lederman, Todd Laramie, Karen Bertolino, Michael Tumulty, Douglas Percey, the Board of Assessors Town of Marblehead, the Town of Marblehead, and Thatcher Kezer, III**

# Table of Authorities

**Cases**

*Bowen v. Roy,* 476 U.S. 693 (1986)

*Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993)

*Cruz v. Savage,* 896 F.2d 626 (1st Cir. 1990)

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U. S. 94, 116, 73 S. Ct. 143, Ed. 97 L. 120 (1952)

*In re Daniel,* No. 13-16365-WCH, 2015 Bankr. LEXIS 1884 (Bankr. D. Mass. June 9, 2015)

*Sanchez v. Esso Standard Oil de P.R.,* No. 08-2151 (JAF), 2010 U.S. Dist. LEXIS 103949 (D.P.R. Sep. 29, 2010)

*Seattle's Union Gospel Mission v. Woods,* 142 S. Ct. 1094 (2022)

*Town of Greece v. Galloway,* 572 U.S. 565 (2014)

*Watson v. Jones,* 80 U.S. 679, 13 Wall. 679, 733, 20 L. Ed. 666 (1872)

**Rules and Regulations**

USCS Fed Rules Civ Proc R 11(b)

**Statutes**

G.L. c. 58A, § 8A
G.L. c. 59, § 5

## I.   Background

On April 4, 2025, by and through counsel, Defendants John Kelley, William Willis, Jonathan Lederman, Todd Laramie, Karen Bertolino, Michael Tumulty, Douglas Percey, the Board of Assessors Town of Marblehead, the Town of Marblehead, and Thatcher Kezer, III (collectively, the "Town Defendants") filed Town Defendants' Opposition to the Plaintiff's Motion for Preliminary Injunction ("Opposition"). The Opposition includes affirmative claims or denials [that] lack evidentiary support (Fed. R. Civ. P. 11(b)(1), (3), and (4)). The Opposition makes numerous claims of vagueness and a failure of Plaintiff to support the basis for requesting the subject injunctive relief; however, numerous pleadings and testimony of the parties belie these assertions. It is not within the purview of the Town Defendants to opine on the merit of Plaintiff's assertions, each of which are supported by objective evidence and testimony, but rather to provide a factual, legal basis for its counterargument, based upon the evidence.

## II.   Argument

Rule 11[1] requires all pleadings to be filed based upon a rational relationship to the facts and the law. In order to satisfy the objective standards imposed by Rule 11, counsel is required to perform a level of diligence to confirm contentions are accurate or will be demonstrated to be

---

[1] (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
  (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
  (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. USCS Fed Rules Civ Proc R 11.

accurate upon adequate investigation in the future. As the Court stated in *Cruz v. Savage,* 896 F.2d 626 (1st Cir. 1990),

> Rule 11 requires attorneys to take responsibility for the claims and defenses they represent; attorneys must make reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay.

As the Court stated in *In re Daniel,* No. 13-16365-WCH, 2015 Bankr. LEXIS 1884 (Bankr. D. Mass. June 9, 2015), "Rule 11 requires attorneys to take responsibility for the claims and defenses they represent." To encourage the parties to address those pleadings violative of Rule 11, the Rule provides for a twenty-one (21) day "safe harbor" within which the counterparty to a Rule 11 motion can amend its pleadings without sanction; enabling the parties to continue the litigation on true fact-based counter arguments to the claims asserted. In *Sanchez v. Esso Standard Oil de P.R.,* No. 08-2151 (JAF), 2010 U.S. Dist. LEXIS 103949 (D.P.R. Sep. 29, 2010), the Court stated:

> Rule 11 prohibits filing documents with the court for any improper purpose, offering frivolous arguments, or asserting factual allegations without evidentiary support or the likely prospect of such support. Rule 11 sanctions seek to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses.

The Opposition makes assertions that are not supported by the objective evidence; therefore, the cited provisions should be amended or stricken in their entirety.

### III.    Opposition Factual Inaccuracies to be Stricken and Sanctioned

The following assertions within the Opposition are factually incorrect or draw legal conclusions that are not supported by the evidence. The assertions run afoul of each of USCS Fed Rules Civ Proc R 11(b)(1), (3), and (4), as they serve no purpose but to pose frivolous counterarguments to objective facts in support of claims made.

At Page 1: "The Plaintiff does not establish any of the necessary prerequisites. First, the Plaintiff fails to articulate how it will suffer likely irreparable harm, offering only conclusory statements in the absence of any supportive caselaw that an inspection – if involving certain Defendants, and recording and touching of holy objects – would cause Egypt House's desecration and therefore irreparable harm."

The foregoing statement does not have any evidentiary support. *See,* Mot for Recons. dated January 15, 2025 at Page 3, filed under Docket No.: F-351238, currently pending before the Appellate Tax Board:

> In this instance, Egypt House has objectively demonstrated a history of particularized harm resulting from disclosure of certain information to the public relative to the matters at-issue. The Orthodox Catholic faith practiced by Fr. Andrew at Egypt House has been the subject of newspaper articles, magazine articles, hateful blog posts, and considerable defamatory Facebook® postings relative to its ministry, the publication of which has been disseminated across the North Shore of Massachusetts, including the greater Boston Massachusetts area. Indeed, the very individuals serving in the role of Chairman of the Board of Assessors and Assistant Assessor for the Town of Marblehead, respectively, engaged in slanderous and libelous behavior regarding Egypt House. Fr. Andrew, the Superior of Egypt House, has been physically and psychologically assaulted as a result of the efforts of the Town of Marblehead to discredit, disparage, and defame the Orthodox Catholic faith community in the Town of Marblehead. It is difficult to contemplate a more widespread campaign of hate speech *perpetrated by a municipality* as evidence of 'good cause to exist,' pursuant to which 'the party seeking protection' has amply fulfilled 'the burden of showing specific prejudice or harm will result if no protective order is granted." *See, also,* Mem. Sup. Prelim. Inj. at Page 3, ECF No.: 6, "[t]he Supreme Court in *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993), stated: '[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.' In a similar vein, the Supreme Court, in *Bowen v. Roy,* 476 U.S. 693 (1986), the Supreme Court stated, '[a] governmental burden on religious liberty is not insulated from review simply because it is indirect, [interior citations omitted] but the nature of the burden is relevant to the standard the government must meet to justify the burden.'

*See, also,* Mem. Sup. Prelim. Inj. at Page 5, ECF No.: 6:

> The guidelines established by Defendant DeFrancisco in the January 7th Order are contrary to the dictates of the Constitution and the theology and beliefs of this minority religious faith. The guidelines established by Defendant DeFrancisco enlarge the rights of the state conferred by statute as opposed to allowing the minor accommodations requested by Egypt House. If allowed to proceed, certain aspects of the G.L. c. 58A, § 8A inspection to which the January 7th Order applies will cause irreparable harm to Egypt House, 2 as such practices are in direct contravention of the church autonomy/ ecclesiastical abstention doctrine. As expressed by the Supreme Court in *Seattle's Union Gospel Mission v. Woods,* 142 S. Ct. 1094 (2022), *citing, Watson v. Jones,* 80 U.S. 679, 13 Wall. 679, 733, 20 L. Ed. 666 (1872), and *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U. S. 94, 116, 73 S. Ct. 143, Ed. 97 L. 120 (1952): 'Our church-autonomy cases explained that 'civil courts exercise no jurisdiction' over matters involving 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.' . . . That is so because the Constitution protects religious organizations 'from secular control or manipulation.'

*See, also,* Mem. Sup. Prelim. Inj. at Page 8, ECF No.: 6:

> As the Supreme Court stated in *Town of Greece v. Galloway,* 572 U.S. 565 (2014), the Establishment Clause must be interpreted by 'reference to historical practices and understandings.' In this instance, the religious beliefs of the religious organization must be recognized. Allowing persons to enter Egypt House who have illegally defamed and discredited the faith (as discussed hereinbelow) is, in and of itself, a desecration. Egypt House is a consecrated space. Our sacred spaces and altars are dedicated by solemn rite. An interesting but little known fact of our belief is, even when the altar and holy objects have been removed from a sacred space, its consecrated quality remains. The Orthodox Catholic faith requires protection of its sacred spaces and the sacred objects contained within them. The Enjoined Provisions damage the religious practice gratuitously. The January 7th Order was entered by the ATB prior to final disposition of the Fiscal Year 2024 Appeal; allowing the G.L. c. 58A, § 8A inspection to proceed under the January 7th Order as-written will cause Egypt House irreparable harm. In the performance of the inspection, without the accommodations requested, the harm will necessarily occur. No *post-hoc* appeal of any sort will be able to remedy the wrong thereby committed. As the parties have all recognized, there are a host of other individuals who can perform the Egypt House inspection — there is no practical basis for *not* prohibiting Defendant Kelley and Defendant Provencher from performing the inspection. The harm to Egypt House caused by the unfettered power of the state to enter upon a sacred space and allow state officials and their advisors to further defile the good and holy space the sanctified premises and its furnishings comprise is, in and of itself, an irreparable harm — entrance by such persons, handling of the holy

objects, and the retention of any photographic image of a holy object destroys the holy nature of the space — once entrance has occurred, the sanctuary created through the consecration of the space is defiled.

*See, also,* Official Transcript dated December 12, 2024 at 10:30:48 – 10:36:44, which provides as follows:

| | |
|---|---|
| Father Andrew: | May I speak, Mr. Chairman? I'm sorry, I understand it is a little bit unusual. |
| Mr. Chairman: | Yes. You want to identify yourself for the record, please. |
| Father Andrew: | My name is Father Andrew. I'm the superior of these properties. So we don't - - we don't object to the ability of - - we agree they have a statutory right to inspect. We do not - - we take the position that that statutory right is not absolute. Last week - - in fact, I was the one who offered them the opportunity to inspect in September. They had a consulting assessor at that time. He just declined to get back to me. I understand that because Mr. Laramie was going to be hired, so they probably wanted the permanent assessor to come in, which seemed reasonable to me.<br>Mr. Provencher has mischaracterized statements that I have made in various for a. That may be an issue for Bar counsel, I don't know. I am not an attorney. But I understand that attorneys are required to be truthful in their statements both to tribunals and to actual courts. I do not feel that Mr. Provencher has ever been forthcoming or exemplified candor before the tribunal. So I think that's a problem.<br><br>In the Orthodox church as well as the Roman Catholic church, we believe that Satan is the father of lies. So that those who lie in front of judges who are required to tell the truth, participate in that. So I would regard Mr. Provencher's presence on the properties as a desecration. So if he wants to have another attorney from his firm come, that's fine. Lisa Mead, Adam Costa, who is the partner, there's a wide variety of people. I invited Mr. Laramie to come and inspect 120 Pleasant Street and Egypt House on Tuesday with the Marblehead building commissioner, who has vast knowledge of the improvements that we've made to St. Nicholas continuously since we purchased the property, in order to turn it into religious part of the Shrine of St. Nicholas, and also Egypt House. Mr. Laramie just didn't show up after he'd agreed to come. Maybe that's a result of Mr. Provencher's counsel, I don't know. But we had the chief of the fire department. We had the building commissioner who were there. We were all waiting for the Marblehead assessor. He just decided not to show up. |

Because it's our feeling, our belief, that there is something dishonest going on. Also we have many examples of emails based on information and believe and text messages between Mr. Kelley, who is the chair of the Board of Assessors, who has declined to inspect any other nonprofit or religious organization in Marblehead. And when confronted with third-party documentary evidence that, for example, Our Lady, Star of the Sea parish has a for-profit daycare and is therefore not entitled to exemption, they don't want to apportion and they don't want to inspect the Catholic church, right? So, the same thing with the Baptist church. The same thing with the Episcopal church. The same thing with the Methodist church. So they've singled us out.

So we are, because there's such a low level of trust between us and the municipal government, we respectfully request guardrails. So we would respectfully request that the ATB send a representative, and the reason why - - and Mr. Laramie, during colloquy with me on Thursday last weeks perhaps, I said, Look we're going to videotape you because town of Marblehead officials have hit me, have disparaged me, have sworn at me, so we need to protect ourselves. We need to for our own safety because we have serious safety concerns. However, if he wants to take pictures of various parts of the place, fine. But he is not allowed to take pictures of the holy vessels. He's not allowed to take pictures of the reliquaries. He's not - - for example, the icon in the chapel, I'm in Egypt House right now, he's not allowed to take pictures of those. We don't have - - we are trying to be reasonable, but we're not going to put ourselves in a position where we're held up to ridicule when we're a religious minority in a small town north of Boston. While we realize that Mr. Provencher has a job to do, we don't think he's playing according to the rules.

So those are our concerns. And we are coming to the Board, Mr. DeFrancisco, we are coming to you to protect a small religious minority. So, we don't have a problem with an inspection per se. We believe the right for inspection is not absolute. We believe we have a right to independent neutral third parties, and I personally have an objection to Mr. Kelley coming into the property when he has disparaged me personally, disparaged me publicly based on information and belief. He's participated with his employee, the assistant assessor, Mr. Tumulty. We provided to this Board Facebook posts of Mr. Tumulty at a bar calling himself Friar Tumulty, and other Facebook posts from his friends after our unjust and perhaps illegal arrest by the F.B.I., which may have been created by certain town of Marblehead officials who misled federal government officials, you know, saying Mike Tumulty was right all along.

So we have lots of information that in the Marblehead Board of Assessors, they have violated our rights. The have defamed us. They have spread

false, malicious and defamatory accusations. And I do think that it is a little bit like have a rape victim inspected in a gynecological exam by the rapist. I don't think that that's an inappropriate way to say it.

## CONCLUSION

The assertions contained in the Opposition detailed above bear no relationship to the evidence provided. Plaintiff Egypt House has supported its allegations with facts based upon law, backed by evidence. To the extent the Town Defendants are in possession of factual information and a valid legal basis for asserting their opposition, they should do so. Once again, Plaintiff Egypt House has spent unnecessary time in citing specific examples of falsehoods and innuendo that are not based upon the facts at hand. Egypt House has borne the expense of securing official transcripts in the underlying proceedings for just this reason — the truth is always shifting on these matters. Plaintiff Egypt House has wasted and continues to waste time and money in exposing the deceptions at play in this matter. The Court's time in reviewing these matters takes away from more important endeavors before the bench. The Court should strike the cited provisions from the Opposition. In addition, an award of attorney fees incurred in bringing this motion is appropriate because it will compensate counsel to Plaintiff Egypt House for its time in setting the record straight.

Respectfully submitted,

DATED: April 15, 2025

/s/Tracey M.A. Stockton
Tracey M.A. Stockton (MA Bar No.: 568495)
Admitted before the United States District Court,
Massachusetts District

*Counsel for Plaintiff*