## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EGYPT HOUSE,<br>　　Plaintiff,<br><br>v.<br><br>JOHN P. KELLEY, as an Individual and in his capacity as Chairman of the Board of Assessors, WILLIAM J. WILLIS, as an Individual and in his capacity as Member of the Board of Assessors, JONATHAN LEDERMAN, as an Individual and in his capacity as Member of the Board of Assessors, TODD LARAMIE, as an Individual and in his capacity as Assistant Assessor, KAREN D. BERTOLINO, as an Individual and former Assistant Assessor, MICHAEL TUMULTY, as an Individual, in his capacity as Assistant Assessor (ret.), and Consultant to the Town of Marblehead, DOUGLAS E. PERCY, as an Individual and in his capacity as Member of Board of Assessors, BOARD OF ASSESSORS, TOWN OF MARBLEHEAD, the TOWN OF MARBLEHEAD, a Massachusetts Township, THATCHER W. KEZER, III, as an Individual and in his capacity as Town Administrator, LISA L. MEAD, as an Individual and in her capacity as Town Counsel, ADAM J. COSTA of Mead, Talerman & Costa, LLC, as an Individual and in his capacity as counsel to the Town of Marblehead, and MATTHEW D. PROVENCHER of Mead, Talerman & Costa, LLC, as an Individual and in his capacity as counsel to the Town of Marblehead, Defendants. | Civil Action No.: 1:25-cv-10597-BEM<br><br>1. Violation of 42 U.S.C.S. § 1983<br>　 (First Amendment Free Exercise)<br>2. Violation of 42 U.S.C.S. § 1983<br>　 (First Amendment Establishment)<br>3. Violation of 42 U.S.C.S. § 1983<br>　 (Fourteenth Amendment Equal Protection)<br>4. Violation of 42 U.S.C.S. § 1983<br>　 (Fourteenth Amendment Substantive Due Process)<br>5. Violation of 42 U.S.C.S. § 1983<br>　 (Fourteenth Amendment Procedural Due Process)<br>6. Violation of 42 U.S.C.S. § 1983<br>　 (Fifth Amendment Takings)<br>7. Violation of 42 U.S.C.S. § 1985<br>　 (Conspiracy)<br>8. Violation of 42 U.S.C.S. § 1986<br>　 (Neglect to Prevent)<br>9. Violation of 18 U.S.C.S. § 248<br>　 FACE Act<br>10. Violation of 42 U.S.C.S. § 1983<br>　 (Municipal Liability *Monell*)<br>11. Violation of 42 U.S.C.S. § 2000cc<br>　 (RLUIPA)<br>12. Violation of 18 U.S.C. § 1962<br>　 (RICO)<br>Supplemental State Claims<br>13. Mass. Const., Part I, Article I (Equality)<br>14. Mass. Const., Part I, Article II<br>　 (Worship According to Conscience)<br>15. Mass. Const., Part I, Article III<br>　 (Public Worship)<br>16. Mass. Const., Part I, Article VI<br>　 (Equal Protection)<br>17. Mass. Const., Part I, Article VII<br>　 (Common Good)<br>18. Mass. Const., Part I, Article X<br>　 (Protection from Injury)<br>19. G.L. c. 12, § 11I<br>　 (Massachusetts Civil Rights Act)<br>**JURY DEMAND** |

## AMENDED AND RESTATED VERIFIED COMPLAINT

## I.    INTRODUCTION

1.      In July 2025, Town of Marblehead officials forced their way into Egypt House's consecrated Orthodox Catholic chapel and photographed its sacred interior, despite being told such photography would constitute desecration under Orthodox Catholic religious law. This forced entry and photography violated clearly established First Circuit precedent protecting against government interference with recording activities and religious exercise, as established in *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011) (constitutional violations can be self-evident), and *Iacobucci v. Boulter,* 193 F.3d 14 (1st Cir. 1999) (First Amendment rights that are "peaceful, not performed in derogation of law must be allowed").

2.      At the time the Town forced this inspection, Egypt House used its property at 12 Conant Road exclusively for religious worship, while the Town granted full tax exemptions without apportionment to Our Lady Star of the Sea Catholic Church, while leasing church property to Seaside Nursery School, a for-profit daycare; Grace Baptist Church, leases exempt space for a cell tower located in its church steeple, and upon information and belief, continues to lease church premises for unrelated organizations, such as the for-profit Pleasant Street School (even if such school is exempt, the subject school has not filed Form 3ABC in accordance with legal requirements therefor; St. Stephen's Methodist Church licensee of a cell tower and past landlord of church premises for unrelated organizations, such as daycare schools; Old North Church, leases a large portion of its exempt parking lot to the JN Picariello construction company, owned by the brother of a former chief of police of the Town; and Unitarian Universalist Church owner-operator of a coffeehouse that features secular music acts. Upon information and belief and statements from Marblehead Assessor staff, the Marblehead Board of

Assessors has never required "stub" tax payments of religious or non-profit groups that acquire property following the July 1 determination date, *i.e.,* abatements are automatically granted without even a paper filing.  However, no abatement has been granted to any Orthodox Catholic organization in Marblehead despite requests therefor. This discriminatory pattern violates the Supreme Court's holding in *Carson v. Makin,* 596 U.S. 767 (2022) (government programs that exclude religious entities from generally available benefits constitute "discrimination against religion").

3.     The Town has never inspected, photographed the sanctuary or religious items, or required tax apportionment of any of the religious organizations referenced despite leasing their property for obvious commercial activities. Under *Carson v. Makin,* such differential treatment based on religious character requires "the strictest scrutiny" and violates the Free Exercise Clause. The Town's Assistant Assessor, Todd Laramie, admitted that the Board of Assessors deliberately chose not to tax these commercial operations because "they didn't want to take money from religious organizations" – a policy that applies only to favored religious denominations, not to Egypt House's Orthodox Catholic worship. In fact, even now, the Town of Marblehead's Board of Assessors, including Defendants Kelley  and Laramie, and Defendant Attorney Provencher, over a month following the pretextual forced inspection and having been in possession of letters from two different priests, one a Russian and one an Albanian, each of whom have celebrated Divine Liturgy in Egypt House's chapel, as well as a bishop from the Ecumenical Patriarchate, all of whom disagree on most other things yet all confirm Father Andrew's religious bona fides as well as his refusal to hand over the names of those protected by the seal of the confessional, continue to employ willful blindness in violation of the First Circuit's ruling in *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979), "reasons may of course

be probative of whether they are pretexts," conscious participation in concealment schemes, even through willful blindness; can establish liability. *See also City of Canton v. Harris,* 489 U.S. 378 (1989) "a deliberate indifference to the rights of its inhabitants" establishes liability. Defendant Provencher has further pushed out the hearing date before the Massachusetts Appellate Tax Board to require additional tax payments when, at any time, Defendants Provencher, Kelley, and/or Mr. Laramie can stop the charade and acknowledge what the Select Board, the Fire Chief, the Police Chief, the Building Commissioner and many other people, including the U.S. Attorney's Office of the Federal District of Massachusetts acknowledge, Egypt House is owned and used for religious purposes. The Supreme Court refused to excuse willful blindness in *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754 (2011), and this Court should not excuse it here. Deliberate ignorance in the face of overwhelming evidence constitutes legal knowledge.

## II.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction under 42 U.S.C. § 1983 (Ku Klux Klan Act, civil action for deprivation of rights in re violations of First, Fourteenth, and Fifth Amendments); 42 U.S.C. § 1983 (Municipal Liability, Monell); 42 U.S.C. § 1983 (pattern or practice); 42 U.S.C. § 1985 (conspiracy to interfere with civil rights); 42 U.S.C. § 1986 (prevent neglect); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights); 18 U.S.C. § 248 (FACE Act); 42 U.S.C. § 2000cc (Religious Land Use and Institutionalized Persons Act); and 18 U.S.C. § 1964(c) (Racketeering and Influenced Corrupt Organizations Act).

5.    This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

6.    Venue is proper under 28 U.S.C. § 1391(b).

## III.    PARTIES

7.     Plaintiff Egypt House is a religious nonprofit corporation operating an Orthodox Catholic chapel, clerical housing, and pilgrim's guesthouse, as well as administrative and storage space, all located at 12 Conant Road, Marblehead, Massachusetts.

8.     Defendant Town of Marblehead is a Massachusetts municipality.

9.     Defendant Board of Assessors is responsible for property tax assessments for the Town of Marblehead.

10.    Defendants Kelley, Willis, and Lederman are members of the Board of Assessors, sued in individual and official capacities.

11.    Defendant Laramie is Assistant Assessor sued in individual and official capacities.

12.    Defendants Bertolino, Tumulty, and Percy are former officials sued in individual and official capacities.

13.    Defendant Kezer is Town Administrator sued in individual and official capacities.

14.    Defendants Mead, Costa, and Provencher are attorneys sued in individual capacities for exceeding the scope of representation and acting beyond any lawful immunity.

## IV.    FACTUAL ALLEGATIONS

### A.    Religious Practice

15.    Egypt House operates a consecrated Orthodox Catholic chapel containing holy relics, sacred vessels, religious icons, it also serves as clergy and pilgrim housing as well as religious event space for church feasts and administrative space for church work.

16.    Orthodox Catholic canon law, as is the religious practice of many Roman Catholic monasteries, Jewish synagogues, Buddhist shrines, and Hindu temples, prohibits photography of sacred spaces and the handling of objects by laypersons (sacred objects must be

treated with reverence and generally only handled by clergy), never mind the rules regarding those who are not adherents of the faith.

17.     Violation constitutes desecration requiring reconsecration and voluntary violation subjects clergy to deposition or excommunication under Orthodox Catholic ecclesiastical law stretching back almost 2,000 years.

**B.     Discriminatory Enforcement**

18.     Since 2022, the Town has denied Egypt House the tax exemption required by M.G.L. c. 59, § 5, Cl. 11.

19.     The Town grants full exemptions to other houses of worship who are more established in the community and lease space for unrelated, non-exempt commercial operations without inspection or apportionment, while subjecting Egypt House to invasive inspection and desecratory "documentation", despite its religious objections.

20.     Assistant Assessor Laramie, who has received emails on this matter from clergy at Egypt House, admitted he discussed this matter with the Marblehead Board of Assessors and they deliberately avoid apportioning church property leased for commercial operations because "they didn't want to take money from religious organizations." Not only do they tax Orthodox property in Marblehead, but they subject Orthodox property to pretextual inspections meant only to harass. Meanwhile, other Massachusetts municipalities respect identical religious practices: Brookline assessors honor photography prohibitions at Holy Transfiguration Monastery (278 Warren Street, Brookline (also an Orthodox Catholic institution) and Boston officials respect the Islamic Society of Boston Cultural Center's restrictions (100 Malcolm X Boulevard, Roxbury). Based on a review of available published precedent, the Massachusetts Appellate Tax Board has never before ordered forced photography of synagogues' Torah scrolls or mosques' prayer

spaces anywhere in the Commonwealth, yet the Massachusetts Appellate Tax Board upheld
Marblehead's forced photography of Egypt House's Orthodox chapel and issued such an order
over the objections of Orthodox clergy.

21.    This selective enforcement constitutes individualized assessment triggering strict
scrutiny under *Employment Division v. Smith,* 494 U.S. 872 (1990), and *Church of the Lukumi
Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) **(**he court must survey meticulously the
circumstances of governmental categories to eliminate, as it were, religious gerrymanders). *See
also Sherbert v. Verner,* 374 U.S. 398 (1963) (system of individualized exemptions requires
compelling interest test); *Doe v. Mills,* 16 F.4th 20 (1st Cir. 2021), *citing Fraternal Order of
Police v. City of Newark,* 170 F.3d 359 (3d Cir. 1999) (Alito, J.) (even facially neutral law
triggers strict scrutiny when it permits individualized exemptions for secular reasons but not
religious ones); *Fulton v. City of Philadelphia,* 593 U.S. 522 (2021), "[a] law is not generally
applicable if it invites the government to consider the particular reasons for a person's conduct
by providing a mechanism for individualized exemptions;" *Blackhawk v. Pennsylvania,* 381 F.3d
202 (3d Cir. 2004) (Alito, J.) (system allowing for case-by-case exemptions triggers strict
scrutiny regardless of whether any exemptions actually granted).

22.    The Town's practice of case-by-case determinations about which churches to
inspect and which to exempt from inspection creates a system of individualized exemptions. *See
Fulton v. City of Philadelphia,* 593 U.S. 522 (2021): "[a] law is not generally applicable if it
invites the government to consider the particular reasons for a person's conduct by providing a
mechanism for individualized exemptions." The Town has never inspected churches that lease
space for non-exempt commercial operations while targeting Egypt House for inspection—this
discretionary enforcement triggers strict scrutiny. To the extent Town Assessors have inspected

other Marblehead churches and confirmed the space leased to unrelated non-exempt commercial organizations and declined to then apportion those spaces, they are in violation of each of the Fourteenth Amendment and Massachusetts General Laws requiring assessment for the "full and fair cash value."

23.    Marblehead stands alone among Massachusetts municipalities in refusing to accommodate religious photography restrictions. While assessors in Brookline, Boston, Cambridge, and other Massachusetts cities respect religious sensibilities regarding sacred spaces, Marblehead targets Egypt House for practices that are accommodated elsewhere throughout the Commonwealth. This disparate treatment among Massachusetts municipalities evidences discriminatory animus rather than legitimate governmental interest.

## C.    Forced Photography

24.    Egypt House sought minimal accommodations to prevent desecration consistent with Religious Freedom Restoration Act principles and mainstream religious practice. Egypt House's requests were far less restrictive than the complete photography bans at Abbey of Gethsemani (3642 Monks Road, Trappist, Kentucky), the total prohibition on photographing Torah scrolls at Congregation Shearith Israel (2 West 70th Street, New York, NY), or the restriction of non-Hindus from entering the sanctum sanctorum at Sri Venkateswara Temple (Aurora, Illinois). *See Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014) (government must accommodate sincere religious beliefs).

25.    Town attorney, including Defendant Provencher, falsely characterized religious accommodations as "refusal to allow inspection." These false statements are in violation of the rules of Professional Conduct, Rule 3.3, "Candor to the Tribunal."

26.    On July 23, 2025, officials photographed the chapel over religious objections.

27.     Despite Egypt House's good faith efforts to accommodate the inspection by covering altars and icons and keeping assessors out of the chapel proper, officials not only photographed the modified space but unnecessarily invaded clergy living quarters, including Father Andrew's bedroom, which served no legitimate tax assessment purpose and violated both religious and individual privacy expectations.

28.     M.G.L. c. 58A, § 8A authorizes inspection but *not* photography, making the photography *ultra vires. See Commonwealth v. Weston W.,* 455 Mass. 24 (2009) (government actions exceeding statutory authority are void).

**D.      Religious Animus**

29.     Former Assistant Assessor Tumulty mocked Father Andrew on Facebook posting as "Friar Tumma Tumulty," offering "confessions" in a bar.

30.     Social media posts from "Johnny Ray," Mr. Tumulty's sometime roommate who owns a bar across from the Orthodox Shrine of St. Nicholas the Wonderworker declared "Michael Tumulty was right all along about the fake Monk!"

31.     The Town deliberately misclassified Egypt House to manufacture pretext for denial. *See Kennedy v. Bremerton School District,* 597 U.S. 507 (2022) (pretextual justifications evidence religious discrimination).

**E.      Attorney Defendants' Ultra Vires Conduct**

32.     Defendants Mead, Costa, and Provencher, while serving as appointed Town Counsel, exceeded any lawful scope of representation.

33.     Defendant Provencher filed a motion to compel Father Andrew to reveal the names of individuals who came to him for sacramental confession, violating centuries of established priest-penitent privilege and protected under *Trammel v. United States,* 445 U.S. 40

(1980) and *United States v. Lowe,* 948 F. Supp. 97 (D. Mass. 1996), *citing In Re Grand Jury Investigation,* 918 F.2d 374 (3d Cir. 1990).

34.    Defendant Provencher also filed motions to compel the names of those who attended liturgical services.

35.    These motions to compel prompted a letter from Bishop Theophan of Philomelion of the Ecumenical Patriarchate who objected to this under canon law, Orthodox theology and practice, and also confirmed the religious use of Egypt House where Bishop Theophan had himself distributed Holy Communion.

36.    This harassment through legal process constitutes a gross violation of First Amendment protections and well-settled law regarding religious confidentiality. *See Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017) ([t]he Free Exercise Clause of the First Amendment protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions). *See also Mockaitis v. Harcleroad,* 104 F.3d 1522 (9th Cir. 1997) (recording of sacramental confession violates Free Exercise Clause).

37.    The attorney defendants conspired with municipal officials to deprive Egypt House of constitutional rights under color of state law. *See Tower v. Glover,* 467 U.S. 914 (1984) (no immunity for private parties conspiring with state officials).

38.    No immunity, qualified or otherwise, extends to attorneys who violate federal civil rights statutes, particularly 42 U.S.C. § 1983, which was specifically designed to provide remedies against state actors and their co-conspirators. *See Dennis v. Sparks,* 449 U.S. 24 (1980) (private parties acting under color of state law can be held liable under § 1983).

39.    The attorney defendants cannot claim immunity for participating in a conspiracy under 42 U.S.C. § 1985, as conspiracy to violate civil rights falls outside any legitimate scope of

legal representation. *See Heffernan v. Hunter,* 189 F.3d 405 (3d Cir. 1999) (no qualified immunity for conspiracy claims).

40.     By attempting to compel disclosure of confessional communications and participating in religious discrimination, the attorney defendants acted not as advocates but as active participants in constitutional violations. *See Polk County v. Dodson,* 454 U.S. 312 (1981) (attorneys can be state actors when conspiring with officials to deprive constitutional rights).

**F.    Racketeering Enterprise and Pattern**

41.     Defendants operate as an association-in-fact enterprise engaged in a pattern of racketeering activity through mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and extortion (18 U.S.C. § 1951).

42.     **The Interstate Commerce Infrastructure**:  The Town of Marblehead contracts with Catalis, LLC, a company based in Alpharetta, Georgia and Edmonton, Alberta, Canada. Catalis operates cloud-based software programs AssessPro (used by the Board of Assessors) and CollectPro (used by the Tax Collector). Catalis operates on Amazon Web Services (AWS) infrastructure, with data centers primarily located in Northern Virginia (Loudoun County, Prince William County, and Fairfax County) and Ohio (New Albany, Dublin, and Hilliard). Every use of these programs involves transmission of data from Massachusetts to out-of-state servers, establishing interstate commerce for all predicate acts.

43.     **Wire Fraud - Specific Acts**:  For decades prior, but for the years relevant to this case, beginning in fiscal year 2022 and continuing through 2025, Defendants knowingly transmitted false property assessment data across state lines through the Catalis AssessPro system: a. **WHO**: Defendants Kelley, Willis, Lederman (Board members) and Laramie (Assistant Assessor), Bertolino (Former Assistant Assessor) personally uploaded or directed the

upload of assessment data. b. **WHAT**: False data transmitted includes: (i) zero dollar valuations for commercial operations at Our Lady Star of the Sea's 30-year daycare operation and no record at all of the Roman Catholic parish's rectory property (an approximate 3,000 square foot stone structure across from the Marblehead Police Station) which the Assessors know or should have known exists because of a long time parking lot dispute with the Marblehead Police who use the church's parking lot; (ii) zero dollar valuations for Grace Community Baptist Church's cell tower lease or the for-profit Pleasant Street School and other for-profit day schools operating in rented church space; (iii) zero dollar valuations for St. Stephen's cell tower lease or the unrelated day schools in rented church space that are either for profit or do not file the required annual non-profit form 3ABC required for the real property tax exemption; (iv) zero valuations for Old North's parking rental to the JN Picariello construction company owned by the brother of a former chief of police; (v) zero dollar valuations for Unitarian Universalist's commercial coffeehouse; (vi) falsely classifying Egypt House as non-religious despite overwhelming evidence in the possession of Assessors over the course of years. c. **WHEN**: These fraudulent transmissions occurred during the annual fall assessment periods in 2022, 2023, 2024, and 2025, when assessors upload property valuations to AssessPro — at least 20 separate wire fraud acts (4 years × 5 properties with false data) – and, while not germane to this specific case, this behavior stretches back over decades (the exact number of offenses will be determined in discovery). d. **WHERE**: Each transmission traveled from Marblehead, Massachusetts to AWS data centers in Northern Virginia and/or Ohio and then back to Marblehead, Massachusetts to misinform the Marblehead Tax Collector. e. **HOW**: Using Catalis AssessPro, Defendants uploaded datasets they knew violated M.G.L. c. 59, § 5's requirement that all properties be assessed at "full and

fair cash value;" deliberately excluding commercial operations to benefit favored churches while including all of Egypt House's property as fully taxable at full and fair cash value.

44.    **Wire Fraud - Assessment to Collection Transfer**:  After each annual assessment, Defendants transmitted false data from AssessPro to CollectPro across state lines:  a. each fiscal year from 2022-2025, the Board transmitted assessment data to the Tax Collector through Catalis' interstate cloud infrastructure — 8 additional wire fraud acts (twice yearly for 4 years). b. Assistant Assessor Laramie admitted the Board deliberately excludes church commercial operations because "they didn't want to take money from religious organizations," confirming knowledge of the falsity of these transmissions.

45.    **Mail Fraud - Tax Bills**:  Based on the fraudulent wire transmissions, the Tax Collector mailed false tax bills through U.S. Mail:  a. **Egypt House Bills**: Quarterly tax bills (August 1, November 1, February 1, May 1) from fiscal years 2021-2025 demanding payment twice a year for property Defendants knew was tax-exempt under M.G.L. c. 59, § 5, Cl. 11— approximately 10 acts (2 bills × 5 years). b. **Zero-Dollar Bills to Favored Churches**: Quarterly zero-dollar bills to five churches with commercial operations, fraudulently concealing taxable use from the Commonwealth — approximately 50 acts (5 churches × 2 bills × 5 years). c. The February and May bills are "actual" bills based on the current year's fraudulent assessments, while August and November bills are "estimated," based on the previous year's fraud, creating a continuous pattern.

46.    **Additional Wire Fraud - Omission of Properties**:  Defendants committed wire fraud by deliberately omitting entire properties from the AssessPro database:  a. The rectory building for Our Lady Star of the Sea is entirely absent from assessing records, despite being a

substantial structure used for non-religious purposes. b. Each annual upload to Catalis that omits this property constitutes wire fraud—5 additional acts (one per year 2021-2025).

47.    **Extortion Under Hobbs Act**:  Defendants' threat to foreclose on Egypt House's property for non-payment of illegally assessed taxes constitutes extortion under 18 U.S.C. § 1951:  a. Massachusetts law permits tax foreclosure after non-payment. G.L. c. 60, § 53. b. By threatening Egypt House with loss of its consecrated chapel through illegal taxation while exempting similarly situated churches, Defendants engaged in extortion under color of official right.

48.    **Pattern and Continuity**:  Upon information and belief, at a minimum, this pattern of racketeering activity spans 3 years (2022-2025 including the preparatory acts) and involves many dozen predicate acts; the exact amount number of which will be determined through discovery:

- o    6+ wire fraud acts (uploading false assessments)
- o    12+ wire fraud acts (assessment to collection transfers)
- o    6+ mail fraud acts (Egypt House tax bills)
- o    40+ mail fraud acts (zero-dollar bills to favored churches)
- o    4+ wire fraud acts (omitting properties)
- o    acts of extortion in each bill through allegations of penalty, interest, and/or foreclosure threats

The foregoing satisfy each of the continuity and relationship requirements under *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989).

49.    **Enterprise Structure:  The enterprise consists of the Town of Marblehead, the** Board of Assessors, the Tax Collector's office, and their agents, operating through the Catalis

interstate cloud infrastructure to execute a scheme depriving Egypt House of constitutional rights while enriching favored churches through fraudulent tax avoidance.

**G.    Tax Injunction Act Inapplicable**

50.    The Tax Injunction Act, 28 U.S.C. § 1341, does not bar this action as Plaintiff seeks vindication relative to repeated violations of its federal constitutional rights. Plaintiff is not seeking a reduction in the amount of tax assessed. *See Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 115 (1981) (TIA does not bar suits for violations of federal constitutional rights).

51.    This case concerns equal protection, religious discrimination, and civil rights violations — not the value of taxes assessed on a given property. *See Colonial Pipeline Co. v. Morgan,* 474 F.3d 211 (6th Cir. 2007) (TIA does not bar constitutional challenges to discriminatory tax administration). *See also Rosewell v. LaSalle National Bank,* 450 U.S. 503 (1981) (TIA does not bar § 1983 actions seeking to vindicate federal constitutional rights).

52.    Determination of property ownership and religious use under M.G.L. c. 59, § 5, Cl. 11 solely requires verification of title and observation of religious activity—not forced photography of sacred spaces, not four years of appeals, and not willful blindness to dispositive evidence.

53.    Defendants deliberately ignored overwhelming evidence of Egypt House's religious character, including letters from two Orthodox priests, an Orthodox bishop, and Father Andrew's total vindication in federal court on charges prompted by statements he was not a legitimate monk. Upon information and belief, those sole nexus between this theory and the federal authorities are Defendants. *See Matter of Congregation Yetev Lev D'Satmar, Inc. v.*

*Kahana,* 9 N.Y.3d 282 (2007) (ignoring evidence of religious character while accepting it for others evidences discrimination).

54.    The deliberate indifference to exculpatory evidence evidenced hereinabove, while simultaneously accepting less or no documentation from favored churches, constitutes fraud and evidences discriminatory animus. *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324 (1977) (disparate treatment in evaluating similar evidence demonstrates discriminatory intent). *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) (pretextual reasons for disparate treatment evidence discrimination).

**H.    Younger Abstention Inapplicable**

55.    The Younger abstention doctrine does not bar this action. *See Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69 (2013) (Younger applies only to three categories: ongoing criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders uniquely in furtherance of state courts' ability to perform judicial functions).

56.    This case is not a state court proceeding but an administrative tax proceeding that does not fall within Younger's narrow categories. *See Guillemard-Ginorio v. Contreras-Gómez,* 585 F.3d 508 (1st Cir. 2009) (administrative proceedings generally do not trigger Younger).

57.    Even if Younger applied, the exception for cases of great and immediate irreparable injury applies here, as forced desecration of sacred space causes immediate spiritual harm that cannot be remedied. *See Kugler v. Helfant,* 421 U.S. 117 (1975) (exception where irreparable injury is both great and immediate).

**I.    Principles of Comity Do Not Apply**

58.     Federal courts have jurisdiction over federal constitutional claims even when they arise in the context of state tax administration. *See Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 116 (1981): "§ 1983 was intended to provide a federal remedy for deprivations of federal rights, and federal courts must entertain such suits."

59.     Comity concerns are overcome where, as here, state officials engage in bad faith discrimination and harassment. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975) (bad faith exception to abstention).

**J.     A Word about Qualified Immunity**

60.     No individual Defendant is entitled to qualified immunity because each of them personally violated clearly established law. In *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011), the First Circuit held constitutional violations involving recording rights are "self-evident" and the relevant law was "clearly established a decade prior" to the 2011 decision. Given that *Iacobucci v. Boulter,* 193 F.3d 14 (1st Cir. 1999) established these principles in 1999, the law protecting against forced photography, *i.e.,* that violations could be self-evident, by government officials was clearly established 26 years before Defendants' 2025 conduct.

61.     The religious discrimination principles violated here were clearly established by decades of Supreme Court precedent, recently reaffirmed in *Carson v. Makin,* 596 U.S. 767 (2022)*.* No reasonable official could believe denying religious tax exemptions to Egypt House while granting them to other religious organizations was constitutionally permissible. As the Supreme Court explained, such discrimination against religion cannot survive even rational basis review, let alone the strict scrutiny required in the case of instances of religious discrimination.

62.     Under the First Circuit's precedent, "a police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it."

*Iacobucci,* 193 F.3d at 25. Here, municipal officials cannot claim immunity when compelling photography with "no colorable legal basis" and against clearly established constitutional principles protecting religious exercise.

**CLAIMS FOR RELIEF**

**First Cause of Action**
**Violation of 42 U.S.C. § 1983 - First Amendment Free Exercise**
*(Against All Defendants)*

63.    Plaintiff incorporates all previous allegations as if fully set forth herein.

64.    The Free Exercise Clause prohibits religious discrimination and requires strict scrutiny for individualized assessments affecting religious exercise. *See Fulton v. City of Philadelphia,* 593 U.S. 522 (2021) (system of individualized exemptions triggers strict scrutiny). *See also Trinity Lutheran Church v. Comer,* 582 U.S. 449 (2017) (exclusion from public benefit based on religious character violates Free Exercise).

65.    Even facially neutral laws trigger strict scrutiny when applied through individualized assessments. While Massachusetts municipalities including Brookline and Boston respect photography restrictions at religious institutions within their jurisdictions and, while the Appellate Tax Board has never ordered photography at synagogues or mosques elsewhere in Massachusetts, Marblehead alone forces Egypt House to submit to photography Egypt House deems sacrilegious. This singles Egypt House out, not just among Marblehead churches, but among all religious institutions across Massachusetts. *See Stormans, Inc. v. Wiesman,* 579 U.S. 942 (2016), *citing Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993) (a law that discriminates against religiously motivated conduct is not "neutral"). *See also Ward v. Polite,* 667 F.3d 727 (6th Cir. 2012) (ad hoc exemptions trigger strict scrutiny); *Silva v. Clarke,* No. 10-11381-RGS, (D. Mass. Dec. 22, 2010)**,** *citing Midrash Sephardi, Inc. v. Town of Surfside,*

366 F.3d 1214 (11th Cir. 2004) ("substantial burden can result from pressure that tends to force

adherents to forego religious precepts or from pressure that mandates religious conduct"); *Doe v.*

*Mills,* 566 F. Supp. 3d 34 (D. Me. 2021), *citing Central Rabbinical Congress v. New York City*

*Dept. of Health,* 763 F.3d 183 (2d Cir. 2014), *citing Church of Lukumi Babalu Aye v. City of*

*Hialeah,* 508 U.S. 520 (1993) ("[a] law is . . . not generally applicable if it is substantially

underinclusive such that it regulates religious conduct while failing to regulate secular conduct

that is at least as harmful to the legitimate government interests purportedly justifying it").

66.     Defendants violated Plaintiff's clearly established rights under the Free Exercise

and Establishment Clauses of the First Amendment. The Supreme Court's decision in *Carson v.*

*Makin,* 596 U.S. 767 (2022), establishes government programs identifying and excluding

"otherwise eligible [entities] on the basis of their religious exercise" constitutes impermissible

"discrimination against religion." Here, Defendants denied tax exemptions to Egypt House while

granting such statutorily mandated exemptions to other religious organizations who did not even

merit the exemptions in their entirety, creating the exact type of discriminatory benefit program

prohibited by *Carson.*

67.     The forced photography of Egypt House's consecrated chapel violates the First

Circuit's clearly established precedent protecting recording and photographic rights. In *Glik v.*

*Cunniffe,* 655 F.3d 78, 85 (1st Cir. 2011), the court held government interference with recording

activities violates constitutional rights that were "clearly established a decade prior" to the 2011

decision. In *Iacobucci v. Boulter,* 193 F.3d 14, 25 (1st Cir. 1999), the First Circuit established

government officials "lacked the authority" to interfere with recording activities when such

activities were "peaceful, not performed in derogation of any law, and done in the exercise of

[First Amendment] rights." Here, Defendants not only interfered with recording but used government force to compel photography against Orthodox Catholic religious law.

68.    These constitutional violations were "self-evident" under First Circuit precedent. As the *Glik* court explained, some constitutional violations are inherently obvious and the law protecting against such violations was clearly established decades before the violation occurred. No reasonable government official could believe that forcing photography of a consecrated religious space against explicit religious objections was constitutionally permissible in 2025, given binding precedent dating to 1999.

69.    Defendants violated Egypt House's free exercise rights through selective enforcement, forced photography constituting desecration, and denial based on religious identity. *See Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,* 584 U.S. 617 (2018) (religious hostility by government officials violates Free Exercise).

70.    The attorney defendants, Mead, Costa, and Provencher, are not immune from § 1983 liability, as this statute specifically targets state actors and those acting under color of state law, regardless of any claimed appointment as Town Counsel. *See West v. Atkins,* 487 U.S. 42 (1988) (private parties performing state functions are state actors under § 1983).

71.    No compelling interest justifies these burdens. *See Tandon v. Newsom,* 593 U.S. 61 (2021) (strict scrutiny requires least restrictive means).

## Second Cause of Action
### Violation of 42 U.S.C. § 1983 - First Amendment Establishment
*(Against All Defendants)*

72.    Plaintiff incorporates all previous allegations as if fully set forth herein.

73.    The Establishment Clause prohibits governmental hostility to religion. *See Kennedy v. Bremerton School District,* 597 U.S. 507 (2022) (government must be neutral toward religion, not hostile).

74.    Defendants demonstrated hostility through forced photography over religious objections and the practice of denominational favoritism. *See Larson v. Valente,* 456 U.S. 228 (1982) (denominational preferences require strict scrutiny).

75.    Defendant Provencher's attempt to compel disclosure of confessional communications constitutes an egregious establishment clause violation, entangling government with religious sacraments. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696 (1976) (courts must avoid excessive entanglement with religious doctrine).

### Third Cause of Action
### Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection
*(Against All Defendants)*

76.    Plaintiff incorporates all previous allegations as if fully set forth herein.

77.    The Equal Protection Clause forbids religious discrimination. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985) (similarly situated entities must be treated equally).

78.    Defendants violated Plaintiff's clearly established rights under the Equal Protection Clause by subjecting Egypt House to discriminatory treatment based on its religious identity and Orthodox Catholic worship practices. In *Carson v. Makin,* 596 U.S. 767 (2022), the Supreme Court held differential treatment of religious versus secular entities in government benefit programs violates equal protection principles and requires "the strictest scrutiny."

79.    The discriminatory enforcement pattern violates clearly established equal protection law. Defendants grant tax exemptions to religious organizations operating commercial

enterprises within exempt structures, while denying exemptions to Egypt House based solely on its Orthodox Catholic religious character. This selective enforcement based on religious denomination violates the fundamental principle of equal treatment under law.

80.     Defendants cannot satisfy strict scrutiny. The Town's purported justifications for differential treatment serve no compelling government interest and are not narrowly tailored. The pattern of granting exemptions to favored religious organizations while denying them to Egypt House based on Orthodox Catholic worship practices demonstrates impermissible religious discrimination.

### Fourth Cause of Action
### Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Substantive Due Process
*(Against All Defendants)*

81.     Plaintiff incorporates all previous allegations as if fully set forth herein.

82.     The Due Process Clause prohibits arbitrary governmental action that shocks the conscience. *See County of Sacramento v. Lewis,* 523 U.S. 833 (1998) (conduct that shocks the conscience violates substantive due process).

83.     Defendants' conduct shocks the conscience by: (a) forcing desecration of consecrated religious space despite explicit warnings and Egypt House's good faith attempts to accommodate through covering sacred objects; (b) unnecessarily searching Father Andrew's bedroom and other clergy living quarters that have no relevance to tax assessment; (c) attempting to compel disclosure of confessional communications; (d) deliberately ignoring evidence of religious character while accepting less from favored churches; (e) publicly mocking Father Andrew's religious vocation while purporting to make neutral tax assessments; (f) disrespecting religious practices that are universally honored at twenty Orthodox Christian monasteries,

multiple Catholic monasteries, Orthodox synagogues, Islamic mosques, Buddhist temples, and Hindu shrines throughout the United States.

84.     Such targeting of a religious minority for disparate treatment while favoring mainstream denominations represents the arbitrary exercise of governmental power. *See Rochin v. California,* 342 U.S. 165 (1952) (conduct that shocks the conscience violates due process).

**Fifth Cause of Action**
**Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Procedural Due Process**
*(Against Municipal Defendants)*

85.     Plaintiff incorporates all previous allegations as if fully set forth herein.

86.     The Due Process Clause requires notice and meaningful opportunity to be heard before deprivation of property interests. *See Mathews v. Eldridge,* 424 U.S. 319 (1976) (due process requires adequate procedures before property deprivation).

87.     Egypt House has a property interest in the tax exemption mandated by M.G.L. c. 59, § 5, Cl. 11 for religious organizations. See *Board of Regents v. Roth,* 408 U.S. 564 (1972) (property interests created by state law are protected by due process).

88.     Defendants denied Egypt House's exemption without: (a) providing adequate notice of the specific grounds for denial; (b) allowing meaningful opportunity to present evidence of religious character; (c) providing neutral decision-makers free from bias; (d) explaining why evidence from bishops and priests was rejected while less documentation was accepted from other churches.

89.     The four-year administrative process was a sham where the outcome was predetermined based on religious animus, not genuine assessment of statutory criteria. *See Goldberg v. Kelly,* 397 U.S. 254 (1970) (due process requires fair procedures, not merely formal ones).

**Sixth Cause of Action**
**Violation of 42 U.S.C. § 1983 - Fifth Amendment Takings**
*(Against Municipal Defendants)*

90.     Plaintiff incorporates all previous allegations as if fully set forth herein.

91.     The Takings Clause prohibits taking property without just compensation. *See Cedar Point Nursery v. Hassid,* 594 U.S. 139 (2021) (government appropriation of property rights requires compensation).

92.     Tax exemption for religious property is a property right under Massachusetts law. *See Town of Brookline v. Goldstein,* 388 Mass. 443 (1983) (tax exemptions create protectable property interests).

93.     Defendants effectuated a taking by depriving Egypt House of its rightful exemption while granting exemptions to similarly situated properties. *See Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 U.S. 336 (1989) (discriminatory taxation can constitute taking).

**Seventh Cause of Action**
**Violation of 42 U.S.C. § 1985 - Conspiracy**
*(Against Individual Defendants Kelley, Willis, Lederman, Laramie, Bertolino, Tumulty, Percy, Kezer, Mead, Costa, Provencher)*

94.     Plaintiff incorporates all previous allegations as if fully set forth herein.

95.     Defendants conspired to deprive Egypt House of equal protection through coordinated discrimination based on religious animus. *See Griffin v. Breckenridge,* 403 U.S. 88 (1971): "§ 1985(3) reaches private conspiracies aimed at depriving persons of equal protection."

96.     The attorney defendants Mead, Costa, and Provencher actively participated in this conspiracy, with Defendant Provencher's motion to compel confessional disclosures serving as an overt act in furtherance of the conspiracy. *See United Brotherhood of Carpenters v. Scott,* 463 U.S. 825 (1983) (conspiracy requires meeting of minds and overt acts).

97.     No immunity protects attorneys who conspire to violate civil rights, as such

conduct falls entirely outside the scope of legitimate legal representation. *See Wyatt v. Cole,* 504

U.S. 158 (1992) (no qualified immunity for private parties in § 1983 actions).

98.     Defendants Mead, Costa, and Provencher are not entitled to qualified immunity.

Qualified immunity *may* be conferred upon municipal attorneys; however, absolute immunity is

solely conferred upon prosecutors. *See Buntin v. City of Boston,* 857 F.3d 69 (1st Cir. 2017)

confirms Section 1983 provides the exclusive federal remedy for constitutional violations by

municipal officials and administrative or advisory functions do not confer absolute immunity.

99.     Defendants Mead, Costa, and Provencher participated in this conspiracy to violate

Egypt House's constitutional rights by providing legal advice supporting discriminatory

enforcement and forced photography. Advising clients to violate clearly established

constitutional law does not constitute legitimate legal representation entitled to immunity

protection.

**Eighth Cause of Action**
**Violation of 42 U.S.C. § 1986 - Neglect to Prevent**
*(Against Defendants Kezer, Mead, Costa, Provencher)*

100.    Plaintiff incorporates all previous allegations as if fully set forth herein.

101.    These defendants had knowledge of the conspiracy and power to prevent it but

failed to act. *See Clark v. Clabaugh,* 20 F.3d 1290 (3d Cir. 1994) (§ 1986 requires knowledge,

power to prevent, and failure to act).

102.    The attorney defendants, despite their ethical obligations to refuse participation in

civil rights violations, instead facilitated and advanced the unconstitutional scheme. *Mass. R.*

*Prof. Conduct 1.2(d)* (lawyer shall not counsel client to engage in conduct lawyer knows is

criminal or fraudulent).

**Ninth Cause of Action**
**Violation of 18 U.S.C. § 248 - FACE Act**
*(Against Individual Defendants Kelley, Willis, Lederman, Laramie, Bertolino, Tumulty, Percy, Mead, Costa, Provencher)*

103.    Plaintiff incorporates all previous allegations as if fully set forth herein.

104.    The FACE Act prohibits interfering with religious exercise at places of worship. *See United States v. Weslin,* 156 F.3d 292 (2d Cir. 1998) (FACE protects religious exercise at places of worship).

105.    The FACE Act prohibits using force, threats of force, or physical obstruction to intentionally interfere with religious exercise at places of worship. Defendants violated this prohibition by using the threat of property seizure to coerce Egypt House into allowing photography that constitutes desecration under Orthodox Catholic religious law.

106.    The economic intimidation through threatened tax enforcement constitutes the type of coercive government conduct prohibited by the FACE Act. First Circuit precedent in *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011) and *Iacobucci v. Boulter,* 193 F.3d 14 (1st Cir. 1999) establishes that government officials cannot use coercive tactics to compel activities that violate constitutional rights. Here, Defendants' threat to seize Egypt House's property unless Father Andrew consented to religious desecration constitutes economic intimidation designed to force violation of religious law.

107.    Defendants' conduct was "intentional" within the meaning of the FACE Act. The forced photography was deliberate and purposeful, occurring despite Father Andrew's explicit explanation that such photography would violate Orthodox Catholic religious law. Under First Circuit qualified immunity doctrine established in *Glik* and *Iacobucci, supra,* officials cannot claim ignorance when violating clearly established constitutional principles protecting religious exercise.

108.    Defendants used governmental force to compel violation of religious law through forced photography and inspection of consecrated space. *See United States v. Gregg,* 226 F.3d 253 (3d Cir. 2000) (force includes governmental coercion). *See also New York ex rel. Spitzer v. Operation Rescue Nat'l,* 273 F.3d 184 (2d Cir. 2001) (governmental enforcement action can constitute force under FACE Act).

109.    On July 23, 2025, Defendant Kelley personally attended the forced inspection, where he directly ordered the photography of Egypt House's sacred interior, despite Father Andrew's explicit warnings that such photography would constitute desecration under Orthodox Catholic religious law—warnings that align with the photography prohibitions at Saint Herman of Alaska Monastery (California), Clear Creek Abbey (Oklahoma), and New Melleray Abbey (Iowa) — none of which face governmental interference with their religious practices.

110.    Defendant Laramie, acting under Defendant Kelley's direct orders, carried out the photography of sacred objects, altars, and icons, completing the desecration of the consecrated space.

111.    Defendant Provencher attended and facilitated the forced inspection, having previously attempted to compel Father Andrew to disclose the names of penitents who came for sacramental confession, directly interfering with the sacrament of reconciliation at Egypt House's place of worship.

112.    Board members Defendants Willis and Lederman authorized the forced inspection and photography despite Egypt House's explicit warnings about desecration.

113.    Former officials Defendants Bertolino, Tumulty, and Percy participated in the years-long pattern of discrimination that culminated in the forced desecration, with Defendant Tumulty publicly mocking Father Andrew's religious vocation.

114.    Attorney Defendants Mead and Costa facilitated the forced inspection through legal proceedings that ignored Egypt House's religious liberty rights.

115.    Defendants' actions intentionally interfered with Egypt House's First Amendment right to religious freedom at its place of worship by forcing desecration of consecrated space, preventing religious services during the period of desecration, and creating fear among worshippers that their sacred spaces could be violated at will.

**Tenth Cause of Action**
**Violation of 42 U.S.C. § 1983 - Municipal Liability (Monell)**
*(Against Town of Marblehead)*

116.    Plaintiff incorporates all previous allegations as if fully set forth herein.

117.    The Town of Marblehead is liable under 42 U.S.C. § 1983 for constitutional violations resulting from:  (1) an official policy or custom; (2) actions by final policymakers; or (3) deliberate indifference to constitutional rights. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) and *City of Canton v. Harris,* 489 U.S. 378 (1989).

118.    **Official Policy or Custom**: The Town maintains an official policy and longstanding custom of granting blanket tax exemptions to favored churches with on site non-exempt commercial operations while subjecting Egypt House to heightened scrutiny, repeated denials, and forced inspections. *See Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) (single decision by final policymaker can constitute official policy).

119.    The Town's custom is demonstrated by: (a) thirty years of exempting Our Lady Star of the Sea's commercial daycare without inspection; (b) exempting Grace Baptist's cell tower lease without apportionment; (c) exempting St. Stephen's, Old North's, and Unitarian Universalist's commercial operations; while (d) subjecting only Egypt House to four years of denials and forced inspection; (e) refusing to follow the standard practice of other Massachusetts

municipalities that respect religious photography restrictions; (f) becoming the only known Massachusetts municipality to force photography over religious objections at a house of worship.

120.    **Final Policymaker Authority**: The Board of Assessors possesses final policymaking authority over tax exemptions under M.G.L. c. 59. Their decisions to deny Egypt House's exemption while granting others' represents official municipal policy. *See Praprotnik v. City of St. Louis,* 485 U.S. 112 (1988) (liability when official with final policymaking authority causes constitutional violation).

121.    **Deliberate Indifference**: The Town acted with deliberate indifference to Egypt House's constitutional rights by:  (a) ignoring evidence of religious character from bishops and priests; (b) disregarding Father Andrew's federal acquittal; (c) permitting Defendant Provencher to seek disclosure of confessional communications; (d) allowing forced photography despite warnings of desecration; (e) refusing to follow the practice of other Massachusetts municipalities that accommodate identical religious restrictions; (f) proceeding with forced photography despite the Appellate Tax Board's consistent practice of never ordering such invasive measures at synagogues, mosques, or other houses of worship throughout Massachusetts. *See Connick v. Thompson,* 563 U.S. 51 (2011) (deliberate indifference shown by continued adherence to approach known to violate constitutional rights).

122.    The Town's deliberate indifference is further evidenced by Assistant Assessor Defendant Laramie's admission that the Board deliberately avoids taxing church commercial operations because "they didn't want to take money from religious organizations," while contemporaneously taking money from Egypt House.

123.    The constitutional violations were caused by the Town's policies, customs, and deliberate indifference, resulting in deprivation of Egypt House's rights under the First and Fourteenth Amendments.

**Eleventh Cause of Action**
**Violation of 42 U.S.C. § 2000cc - RLUIPA**
*(Against Municipal Defendants)*

124.    Plaintiff incorporates all previous allegations as if fully set forth herein.

125.    RLUIPA prohibits land use regulations substantially burdening religious exercise or discriminating based on religion. Under the First Circuit's analysis in *Signs for Jesus v. Town of Pembroke,* 977 F.3d 93 (1st Cir. 2020), substantial burden under RLUIPA is established by examining: (a) whether regulations target religion with hostility; (b) whether imposed arbitrarily; (c) whether designed to reach predetermined outcomes against religious requests. Defendants' selective tax enforcement against Egypt House satisfies all three criteria. *See Holt v. Hobbs,* 574 U.S. 352 (2015) (RLUIPA requires strict scrutiny for substantial burdens on religious exercise).

126.    The substantial burden analysis under First Circuit precedent supports Plaintiff's claims. In *Roman Catholic Bishop v. City of Springfield,* 724 F.3d 78 (1st Cir. 2013)*,* the First Circuit recognized that government regulatory schemes targeting religious property rights can create substantial burdens under RLUIPA, particularly when applied selectively or with discriminatory intent. Here, Defendants created a discriminatory enforcement scheme specifically targeting Egypt House through selective tax denial, forced inspections, and compelled photography, while exempting other religious organizations from similar requirements.

127.    Defendants' conduct demonstrates hostility toward Orthodox Catholic religious exercise. The forced photography over religious objections, the denial of tax exemptions granted

to other religious organizations, and the selective enforcement pattern demonstrate the type of

religious animus prohibited by RLUIPA. The First Circuit's three-factor analysis in *Signs for*

*Jesus v. Town of Pembroke,* 977 F.3d 93 (1st Cir. 2020) confirms such targeted enforcement

against religious organizations violates federal law.

128.    The discriminatory treatment is particularly egregious given that Massachusetts

assessors statewide respect these same religious practices. The Appellate Tax Board's disparate

treatment — never ordering photography at synagogues where Torah scrolls are kept or mosques

with prayer restrictions, while upholding Marblehead's forced photography at Egypt House —

demonstrates religious discrimination at both municipal and state levels in violation of

RLUIPA's equal terms provision. 42 U.S.C. § 2000cc(b)(1).

**Twelfth Cause of Action**
**Violation of 18 U.S.C. § 1962 - RICO**
*(Against All Defendants)*

129.    Plaintiff incorporates all previous allegations as if fully set forth herein

130.    Defendants constitute an enterprise engaged in mail fraud, wire fraud, and

extortion. *See Boyle v. United States,* 556 U.S. 938 (2009) (RICO enterprise includes

association-in-fact).

131.    Egypt House suffered injury to business and property through payment of

unlawful taxes and damage to religious mission. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479

(1985) (RICO requires injury to business or property).

**Thirteenth Cause of Action**
**Violation of Mass. Const., Part I, Article I (Equality)**
*(Against All Defendants)*

132.    Plaintiff incorporates all previous allegations as if fully set forth herein.

133.    Article I guarantees equality. Defendants treated Egypt House unequally. *See Goodridge v. Department of Public Health,* 440 Mass. 309 (2003) (Article I prohibits arbitrary discrimination).

### Fourteenth Cause of Action
### Violation of Mass. Const., Part I, Article II (Worship According to Conscience)
*(Against All Defendants)*

134.    Plaintiff incorporates all previous allegations as if fully set forth herein.

135.    Article II protects worship according to conscience. Defendants forced desecration. *See Attorney General v. Desilets,* 418 Mass. 316 (1994) (Article II provides broader protection than federal Free Exercise Clause).

### Fifteenth Cause of Action
### Violation of Mass. Const., Part I, Article III (Public Worship)
*(Against All Defendants)*

136.    Plaintiff incorporates all previous allegations as if fully set forth herein.

137.    Article III protects public worship. Defendants targeted Orthodox Catholic worship. *See Society of Jesus v. Boston Landmarks Commission,* 409 Mass. 38 (1990) (Article III protects religious institutions from governmental interference).

### Sixteenth Cause of Action
### Violation of Mass. Const., Part I, Article VI (Equal Protection)
*(Against All Defendants)*

138.    Plaintiff incorporates all previous allegations as if fully set forth herein.

139.    Article VI guarantees equal protection. Defendants selectively enforced laws. *See Commonwealth v. King,* 374 Mass. 5 (1977) (selective enforcement violates equal protection).

### Seventeenth Cause of Action
### Violation of Mass. Const., Part I, Article VII (Common Good)
*(Against All Defendants)*

140.    Plaintiff incorporates all previous allegations as if fully set forth herein.

141.    Article VII requires common good. Defendants used power for persecution. See *Opinion of the Justices,* 365 Mass. 681 (1974) (government power must serve public interest, not private vendetta).

## Eighteenth Cause of Action
## Violation of Mass. Const., Part I, Article X (Protection from Injury)
*(Against All Defendants)*

142.    Plaintiff incorporates all previous allegations as if fully set forth herein.

143.    Article X protects from injury. Defendants caused spiritual injury. *See Brown v. Russell,* 166 Mass. 14 (1896) (Article X protects against governmental injury to person and property).

## Nineteenth Cause of Action
## Violation of G.L. c. 12, § 11I (Massachusetts Civil Rights Act)
*(Against All Defendants)*

144.    Plaintiff incorporates all previous allegations as if fully set forth herein.

145.    Defendants interfered with constitutional rights through threats, intimidation, and coercion. *See Batchelder v. Allied Stores Corp.,* 393 Mass. 819 (1985) (MCRA provides remedy for interference with constitutional rights).

146.    Defendant Provencher's motion to compel disclosure of confessional communications constitutes threats and intimidation designed to chill religious exercise. *See Planned Parenthood League v. Blake,* 417 Mass. 467 (1994) (attempts to interfere with constitutional rights actionable under MCRA).

## Twentieth Cause of Action
## Defamation Per Se
*(Against Defendant Tumulty)*

147.    Plaintiff incorporates all previous allegations as if fully set forth herein.

148.    Defendant Tumulty published false statements calling Father Andrew a "fake monk" and implying criminal activity.

149.    These statements constitute defamation per se, as they impugn Father Andrew's fitness for his religious vocation and imply criminal fraud. *See Ravnikar v. Bogojavlensky,* 438 Mass. 627 (2003) (statements impugning professional competence constitute defamation per se).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court:

1.    DECLARE that Defendants violated the Constitution and federal laws cited above, specifically finding that:

   a.    The denial of tax exemptions while granting them to other religious organizations constitutes religious discrimination under *Carson v. Makin;*[1]

   b.    The forced photography violated clearly established First Amendment rights under *Glik v. Cunniffe* and *Iacobucci v. Boulter;*[2] and

   c.    The pattern of selective enforcement violates RLUIPA under First Circuit precedent;

2.    PERMANENTLY ENJOIN Defendants from continuing their pattern of religious discrimination and constitutional violations, consistent with First Circuit precedent requiring protection of religious exercise;

3.    ORDER immediate recognition of Egypt House's tax-exempt status retroactive to 2021, consistent with the equal treatment principles established in *Carson v. Makin;*[3]

---

[1]    *Carson v. Makin,* 596 U.S. 767 (2022)
[2]    *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011) and *Iacobucci v. Boulter,* 193 F.3d 14 (1st Cir. 1999), respectively.
[3]    *Carson v. Makin,* 596 U.S. 767 (2022)

4.      AWARD compensatory damages for all constitutional violations, including damages for religious desecration consistent with First Circuit precedent allowing damages for constitutional harms;

5.      AWARD punitive damages against individual Defendants for their deliberate violations of clearly established constitutional law, as permitted under First Circuit precedent for reckless disregard of constitutional rights;

6.      AWARD attorneys' fees and costs under 42 U.S.C. § 1988, 18 U.S.C. § 248(c)(1)(B), and 42 U.S.C. § 2000cc-2(a); and

7.      GRANT such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

DATED:  September 3, 2025                     /s/Tracey M.A. Stockton
                                             Tracey M.A. Stockton (MA Bar No.: 568495)
                                             Admitted before the United States District Court,
                                             Massachusetts District

                                             *Counsel for Plaintiff*

## VERIFICATION

I, Father Andrew (Bushell), declare under penalty of perjury:

1.      I am the Superior of Egypt House.

2.      I reviewed this Complaint and have full knowledge of its contents.

3.      The factual allegations regarding Egypt House, the Town's actions, and the events described are true to the best of my knowledge and belief.

4.      The July 23, 2025 forced photography of our consecrated chapel violated Orthodox Catholic religious law and caused profound spiritual distress, constituting the type of government interference with religious exercise prohibited by First Circuit precedent.

5.      Egypt House has used and continues to use its property exclusively for religious purposes, entitling it to the same tax exemptions granted to other religious organizations under the equal treatment principles established in *Carson v. Makin.*

6.      The Town's pattern of selective enforcement against Egypt House while exempting other religious organizations demonstrates the discriminatory conduct prohibited by binding First Circuit precedent protecting religious exercise.

EXECUTED this 3rd day of September, 2025, at Marblehead, Massachusetts.

*+ Father Andrew*

Father Andrew (Bushell)
Superior, Egypt House

## CERTIFICATE OF SERVICE

I certify a copy of the above Amended and Restated Verified Complaint was delivered via electronic mail on September 3, 2025, to the following parties:

Leonard H. Kesten, Esq.
Brody, Hardoon, Perkins & Kesten, LLP
lkesten@bhpklaw.com

Nina Bonelli, Esq.
Brody, Hardoon, Perkins & Keston, LLP
nbonelli@bhpklaw.com

George C. Rockas, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
George.Rockas@wilsonelser.com

Anne V. Kim, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
Anne.Kim@wilsonelser.com

/s/Tracey M.A. Stockton

Certificate of Service - Page Solo