UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EGYPT HOUSE,<br>  Plaintiff,<br><br>v.<br><br>JOHN P. KELLEY, *et al.,*<br>  Defendants | )  Civil Action No.: 1:25-cv-10597-BEM<br>)<br>)  **ORAL ARGUMENT REQUESTED**<br>)<br>)<br>)<br>) |

# EMERGENCY MOTION FOR
# TEMPORARY RESTRAINING ORDER AND PRELIMINARY
# INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

## Table of Authorities

**Cases**

*Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2382 (2021)

*Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)

*Employment Division v. Smith*, 494 U.S. 872 (1990)

*Kyllo v. United States*, 533 U.S. 27, 34 (2001)

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

*NAACP v. Alabama*, 357 U.S. 449, 462 (1958)

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)

**Statutes**

18 U.S.C. § 242

18 U.S.C. § 248

42 U.S.C. § 2000cc

M.G.L. c. 58A, § 8A

M.G.L. c. 59, § 5

### I.  INTRODUCTION

Plaintiff Egypt House seeks emergency injunctive relief to prevent imminent and irreparable harm to its fundamental constitutional rights. This consolidated motion seeks both a temporary restraining order and preliminary injunction. First, to prevent the dissemination of photographs of Egypt House's consecrated Orthodox Catholic monastic chapel taken over religious objections on July 23, 2025 (the "July 23rd Images") before their scheduled entry into the public record at a November 12, 2025 Massachusetts Appellate Tax Board hearing; second, to prevent Defendants from compelling disclosure of the names of worshippers, pilgrims, and penitents in violation of clearly established First Amendment law; and third, to enjoin further governmental intrusion into sacred religious spaces and practices.

The urgency cannot be overstated. Following this Court's August 14, 2025 order requiring Plaintiff to refile its complaint within twenty-one days thereafter, Defendants demonstrated their intent to weaponize litigation for religious harassment by filing discovery demands for the names of worshippers on September 5, 2025 at precisely 5:00 p.m. — merely one day after Plaintiff's refiling deadline. This timing was calculated to prevent Plaintiff from addressing this constitutional violation in its amended complaint. This action follows Defendants' September 2023 attempt to compel Father Andrew, an Orthodox Catholic monk and Superior of Egypt House, to violate the sacred seal of confession by disclosing penitent names — a demand that would result in automatic excommunication under Orthodox Catholic canon law.

These actions constitute a systematic campaign to burden Orthodox Catholic religious practice through governmental intimidation, compelled disclosure of protected religious associations, and desecration of consecrated space. Without immediate relief, the November 12, 2025 hearing will result in permanent, irreversible harm when the chapel photographs enter the public record and become subject to media dissemination.

## II.     STATEMENT OF FACTS

Egypt House is an Orthodox Catholic monastic residence and private place of worship located at 12 Conant Road, Marblehead, Massachusetts, containing a consecrated Orthodox Catholic chapel with the Holy Eucharist, holy relics, sacred vessels, and religious icons, including holy relics of Saint Andrew the First-Called Apostle, Saint Basil the Great, Saint Minas of Egypt, Saint Valerian of Rome, Saint Boniface, a piece of the coffin of Saint Nectarios of Aegina, and dirt from the baptismal site of Our Lord and Savior Jesus Christ, sacred vessels used for Holy Communion, and hand-written icons written according to Orthodox tradition. Father Andrew (Bushell) and other Orthodox Catholic clergy conduct religious services including Vespers, Matins, and Tersext; celebrate the Divine Liturgy; offer the Holy Mysteries including Confession, Holy Communion, and Holy Unction; provide spiritual direction; and offer marriage counseling to the faithful.

Under Orthodox Catholic canon law, photography of consecrated spaces without ecclesiastical permission constitutes desecration requiring formal reconsecration. Only ordained clergy may handle sacred objects; violation of this requirement similarly constitutes desecration. These are not mere preferences but fundamental religious laws binding on all Orthodox Catholics.

On July 23, 2025, representatives of the Town of Marblehead, including Defendants Kelley, Laramie, and Provencher, along with Chairman Mark J. DeFrancisco of the Appellate Tax Board for the Commonwealth of Massachusetts ("ATB"), entered Egypt House to perform a M.G.L. c. 58A, § 8A site inspection. Despite Father Andrew's explicit religious objections and explanation that photography would desecrate the consecrated space articulated for several months before the actual site inspection and during the performance of the same, Defendants photographed the chapel, clergy bedrooms, and holy objects. Prior to entry, Egypt House attempted accommodation by offering: detailed floor plans showing

religious use; guided tours of non-sacred areas; temporary covering of sacred objects; and written clergy attestations about religious use. Defendants rejected all accommodations and demanded unconditional access.

Promptly following the July 23, 2025 site inspection pursuant to M.G.L. c. 58A, § 8A, Plaintiff filed a Motion for Protective Order before the ATB seeking to prevent use and dissemination of the photographs. The ATB denied this motion without addressing the religious liberty concerns raised, despite the fact Chairman DeFrancisco suggested the filing in response to Plaintiff's protestations during the July 23, 2025 site inspection. The photographs are now scheduled to enter the public record at the November 12, 2025 hearing, after which they will become immediately available to media outlets including the Marblehead Current, already used by Defendants to great effect in manipulating the public views about Egypt House and the Orthodox Catholic faithful in a hostile manner.

Defendants have engaged in an escalating pattern of religious harassment coordinated with local media to maximize pressure on the Orthodox Catholic community. The pattern includes: on September 6, 2023, Defendants moved to compel Father Andrew to disclose names of penitents who sought the Sacrament of Confession; Bishop Theophan of Philomelion condemned this demand in a September 12, 2023 letter, stating "betraying the confidentiality of a penitent is a crime that screams to Heaven," and comparing it to Communist persecution "in my own native Albania where only seven priests were left in the entire country after dictator Enver Hoxha was finished with his executions;" on July 23, 2025, forced photography of consecrated chapel over religious objections; September 5, 2025 at 5:00 p.m., new discovery demands for worshipper and pilgrim names filed immediately after Plaintiff's refiling deadline relative to this matter.

Defendants have systematically coordinated with the Marblehead Current newspaper and the Legal Times, a newspaper catering to matters of interest to the legal community, to

amplify harassment: Defendant Laramie shared Father Andrew's personal March 3, 2024 email with Marblehead Current reporter Will Dowd, who published verbatim quotes in the April 8, 2025 article "RELIGIOUS FIGHT WIDENS: Monk, town head back to court;" articles are timed to coincide with legal proceedings, inciting public hostility that resulted in an individual upon entering church property and physically assaulting Father Andrew in June 2024; on May 5, 2025, the U.S. District Court revoked the Marblehead Current's press credentials for photographing inside a federal courtroom, demonstrating a pattern of photography violations by the same media entity coordinating with Defendants.

While subjecting Egypt House to invasive inspection and photography, Defendant Board of Assessors grants full tax exemptions to Our Lady Star of the Sea, Grace Community Baptist Church, St. Stephen's, Old North Church, and Unitarian Universalist without any inspection or photography requirements. Upon information and belief and a lack of response by Defendants in response to public records requests with respect thereto, no other religious organization in Marblehead has been subjected to forced photography of their worship spaces. This selective enforcement based on religious denomination violates the neutrality required by the First Amendment.

Recent violence against religious communities heightens the danger of publicly disseminating chapel photographs and worshipper identities: the August 27, 2025 shooting at the Church of the Annunciation in Minneapolis, Minnesota, the September 11, 2025 assassination of Charlie Kirk in Utah; the September 28, 2025 murder and arson at the Church of the Latter Day Saints in Grand Blanc Township, Michigan; arson at Pilgrim Cumberland Presbyterian Church in Beverly, Massachusetts; and two arson attacks at Our Lady Star of the Sea Church in Marblehead. Given Defendants' history of media coordination that previously incited assault against Father Andrew, public dissemination of the chapel

photographs and worshipper names creates genuine security risks for Plaintiff as well as those persons so-identified.

### III.     LEGAL STANDARD

To obtain a temporary restraining order or preliminary injunction, a plaintiff must establish: likelihood of success on the merits; likelihood of irreparable harm absent injunctive relief; the balance of equities tips in plaintiff's favor; and an injunction serves the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In First Amendment cases, the likelihood of success on the merits often proves dispositive because constitutional violations constitute per se irreparable harm. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

### IV.     ARGUMENT

**A.     Egypt House Is Likely to Succeed on the Merits**

Egypt House demonstrates likelihood of success on multiple constitutional and statutory claims, each independently sufficient to warrant emergency relief.

### 1.     *First Amendment – Compelled Disclosure of Religious Associations*

Defendants' September 5, 2025 demand for the names of worshippers and pilgrims violates the First Amendment under binding Supreme Court precedent. In *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), the Court held compelled disclosure of membership lists violates the First Amendment when disclosure would chill the exercise of constitutional rights. The Court stated: "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."

The Supreme Court's 2021 decision in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2382 (2021), reaffirmed and strengthened these protections. Chief Justice Roberts emphasized: "[w]hen it comes to the freedom of association, the protections

of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough." The Court requires "narrow tailoring" for any disclosure requirement that burdens associational rights, a difficult burden to satisfy for Defendants, when Massachusetts law already provides religious exemptions.

The principle applies with even greater force to religious associations, where the right of anonymous worship traces back to the founding era and receives the highest constitutional protection. Bishop Theophan of Philomelion warned the ATB in his September 12, 2023 letter to the ATB that such demands echo Communist persecution: "[t]his also happened in Russia, Ukraine, Serbia, Romania and elsewhere. The East is littered with graves of monks who died to keep the Faith." Defendants' intent to use these names in public proceedings makes the violation particularly egregious.

   2.   **First Amendment – Free Exercise Clause**

The forced photography and threatened dissemination violate the Free Exercise Clause under both *Employment Division v. Smith*, 494 U.S. 872 (1990), and *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993). Defendants' actions specifically target Egypt House's religious practices while respecting secular privacy expectations. The forced photography of a consecrated monastic chapel over religious objections cannot satisfy strict scrutiny because no compelling governmental interest justifies desecrating consecrated space or exposing worshippers to harassment.

Recent Supreme Court precedent strengthens these protections. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), holds that government regulations treating any comparable secular activity more favorably than religious exercise trigger strict scrutiny. Here, Defendants respect privacy in secular contexts—medical facilities, attorney-client meeting spaces, and private homes—while violating the sanctity of consecrated religious space.

3. **RLUIPA**

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, prohibits governmental actions that substantially burden religious exercise unless the government demonstrates both compelling interest and least restrictive means. Defendants' continued refusal to recognize the statutory tax exemptions conferred upon religious organizations, wrongful photography, and demands for worshipper names substantially burden religious exercise by: desecrating consecrated space under Orthodox Catholic canon law, creating ongoing spiritual violation requiring reconsecration, deterring worship through fear of identification and harassment, and violating the sacred confidentiality of religious associations.

Defendants cannot demonstrate any compelling interest for these violations. Plaintiff suggested de minimis guidelines that would have enabled the statutory site investigation to proceed without desecrating Plaintiff's consecrated chapel; however, Defendants refused to consider any such overtures. Tax assessment does not require photographing religious spaces or identifying worshippers; Massachusetts law already mandates religious exemption under Mass. Gen. Laws ch. 59, § 5; the statutory provision allowing inspection following appeal of abatement denial does not authorize photography; and any legitimate governmental interest could be served through the less restrictive alternatives Egypt House offered.

4. **Fourth Amendment Violations**

The warrantless photography on July 23, 2025 violated reasonable expectations of privacy protected by the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 34 (2001). Orthodox Catholic monastic chapels maintain heightened privacy expectations as spaces for confession, spiritual counseling, and sacred mysteries not open to public view. The photography exceeded the scope of any lawful inspection authority and constitutes an unreasonable search.

### 5. *Equal Protection and Due Process Violations*

The selective enforcement against Egypt House while exempting other religious organizations violates equal protection. No other religious organization in Marblehead has been subjected to inspection or photography of their chapel areas. The disparate treatment based on religious denomination lacks any rational basis and violates fundamental fairness guaranteed under the Fourteenth Amendment.

### B. Irreparable Harm Exists Without Immediate Relief

Multiple forms of irreparable harm will occur absent emergency relief:

(a) Religious violations constitute per se irreparable harm: "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. at 67. Each day the photographs exist perpetuates religious desecration under Orthodox Catholic canon law;

(b) The November 12, 2025 ATB hearing creates an imminent deadline after which the harm becomes permanent and irreversible. Once the photographs enter the public record: the images become immediately available to media outlets; sacred images will be subject to manipulation and mockery; the desecration becomes permanent and public; and no subsequent order can undo the religious violation;

(c) The chilling effect on religious exercise constitutes ongoing irreparable harm. The threat of disclosure prevents the faithful from freely associating for worship. Orthodox Catholics avoid seeking spiritual direction or participating in religious activities for fear of identification and harassment. This burden on free exercise cannot be remedied through monetary damages;

(d) No adequate remedy at law exists. Monetary damages cannot: remedy spiritual desecration; restore violated sacred space; compensate for chilled religious exercise;

or undo public dissemination once it occurs. The unique nature of religious harm places it beyond judicial remediation once the violation becomes complete.

C.    **Balance of Equities Favors Emergency Relief**

The equities overwhelmingly favor protecting constitutional rights. Egypt House faces fundamental violations of religious liberty, ongoing spiritual desecration, and permanent harm to the faithful's ability to worship freely. In contrast, Defendants face no cognizable harm by: destroying improperly obtained photographs; respecting the constitutional right to anonymous religious association; or accepting the reasonable accommodations Egypt House offered for any legitimate inspection needs.

Defendants exceeded their statutory authority under Massachusetts law. Mass. Gen. Laws ch. 58A, § 8A authorizes property inspection but does not authorize forced photography over religious objections. Massachusetts law already mandates religious exemption for Egypt House under Mass. Gen. Laws ch. 59, § 5, making Defendants' actions unnecessary for any legitimate governmental purpose. Their ultra vires photography and demands for worshipper names serve only to harass and burden religious exercise.

D.    **Public Interest Supports Emergency Relief**

Protecting religious liberty serves paramount public interests as a foundational constitutional value essential to ordered liberty. Courts consistently recognize "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The public interest particularly favors: protecting minority religious practices from governmental overreach; preventing establishment of dangerous precedents for governmental intrusion into sacred spaces; maintaining the wall of separation between church and state; and ensuring all Americans can worship free from governmental intimidation.

VI.    **CONCLUSION**

Defendants have engaged in a systematic campaign to burden Orthodox Catholic religious exercise through forced photography of consecrated space, attempts to breach the seal of confession, and demands for the names of worshippers and pilgrims. These actions violate clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments, RLUIPA, and the FACE Act,[1] in addition to numerous judicial precedents.

Emergency relief is necessary to prevent irreparable harm before the November 12, 2025 ATB hearing. Once the photographs enter the public record and worshippers' identities are disclosed, no subsequent remedy can undo the religious violations or restore the congregation's ability to worship free from governmental intimidation.

Given the documented history of media coordination that previously incited assault against Father Andrew, combined with recent violence against religious communities nationwide, public dissemination of the chapel photographs and worshipper names creates genuine security risks that compound the constitutional violations already committed.

## RELIEF REQUESTED

WHEREFORE, Egypt House respectfully requests this Court enter both a temporary restraining order and preliminary injunction with the following provisions:

1. **Immediate prohibition** against disseminating, distributing, publishing, or otherwise making public any photographs taken of Egypt House's consecrated chapel on July 23, 2025;

2. **Order requiring immediate destruction** of all photographs taken on July 23, 2025, and return of any physical or digital media containing such images;

3. **Declaration** that the July 23, 2025 forced photography exceeded statutory authority, violated the FACE Act, and was unlawfully obtained through constitutional violations;

---

[1] 18 U.S.C. § 248

4.  **Permanent injunction** against all discovery targeting religious participants, activities, and internal religious organization as constitutionally impermissible;

5.  **Prohibition** against any future photography or entry into Egypt House's consecrated chapel without consent;

6.  **Requirement** that Defendants accept reasonable religious accommodations for any necessary property inspections;

7.  **Enjoinder** of any further media coordination;

8.  **Sanctions** against Defendants for systematic violations of controlling legal precedents and constitutional rights;

9.  **Referral** of evidence of systematic religious discrimination to Department of Justice Civil Rights Division for investigation under 18 U.S.C. § 242; and

10.     Such other relief as deemed just and proper.

                                            Respectfully submitted,

                                            EGYPT HOUSE
                                            By its attorney,


                                            <u>/s/ Tracey M.A. Stockton</u>
                                            Tracey M.A. Stockton (MA Bar No.: 568495)
                                            Admitted before the United States District Court,
                                            District of Massachusetts
                                            *Counsel for Plaintiff*

                                            DATED: October 15, 2025

## CERTIFICATE OF SERVICE

      I hereby certify that on October 15, 2025, a true and correct copy of the foregoing Emergency Motion for Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law was served upon all counsel of record via the Court's CM/ECF system.

                                      <u>/s/Tracey M.A. Stockton</u>
                                      Tracey M.A. Stockton