UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EGYPT HOUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 25-10597-BEM |
| ) | |
| JOHN P. KELLEY, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER ON PLAINTIFF'S
MOTION FOR EMERGENCY RELIEF

**MURPHY, J.**

On October 15, 2025, Plaintiff moved ex parte for a temporary restraining order and preliminary injunction. Dkt. 113. The Court ordered Plaintiff to serve the filings on Defendants within 24 hours. Dkt. 114. Plaintiff instead filed a new motion for a temporary restraining order and preliminary injunction on October 17, 2025. Dkt. 115. The Court held a hearing on that motion on November 3, 2025. Dkt. 126. The Court hereby STRIKES Dkt. 115 for its material misrepresentations to the Court of facts critical to the emergency motion.

Plaintiff asserted, for example, that emergency relief was warranted, among other reasons, because "[o]nly ordained clergy may handle sacred objects"; Defendants had "demanded unconditional access" to the premises and "rejected all accommodations" for the inspection, including the "temporary covering of sacred objects"; and Plaintiff had thereafter suffered the "*forced* photography of consecrated chapel over religious objections." Dkt. 115 at 3–4 (emphasis added). As Plaintiff's counsel conceded at the hearing, however, Defendants "didn't handle religious objects" during the inspection and "everything was covered." Rough Tr. at 14:11–22.

Plaintiff had further asserted, in its motion, that emergency relief was necessary "to prevent Defendants from compelling disclosure of the names of worshippers, pilgrims, and penitents in violation of clearly established First Amendment law."  Dkt. 115 at 2; *see also id.* (describing Defendants' alleged "attempt to compel Father Andrew . . . to violate the sacred seal of confession by disclosing penitent names").  Plaintiff went to great lengths in its motion to emphasize the outrageousness of Defendants' behavior by stating:

> Defendants moved to compel Father Andrew to disclose names of penitents who sought the Sacrament of Confession; Bishop Theophan of Philomelion condemned this demand in a September 12, 2023 letter, stating "betraying the confidentiality of a penitent is a crime that screams to Heaven," and comparing it to Communist persecution "in my own native Albania where only seven priests were left in the entire country after dictator Enver Hoxha was finished with his executions."

Dkt. 115 at 4.  Plaintiff then went on to claim that Defendants sought the names of all worshipers, arguing that:

> [T]he right of anonymous worship traces back to the founding era and receives the highest constitutional protection.  Bishop Theophan of Philomelion warned the ATB in his September 12, 2023 letter to the ATB that such demands echo Communist persecution: "[t]his also happened in Russia, Ukraine, Serbia, Romania and elsewhere.  The East is littered with graves of monks who died to keep the Faith."  Defendants' intent to use these names in public proceedings makes the violation particularly egregious.

*Id.* at 7 (second alteration in original).  These assertions, on first blush, would doubtless raise significant First Amendment concerns.  However, Plaintiff did not provide support for these assertions in its motion and was unable to do so at the hearing—even though the Court provided Plaintiff's counsel a recess to locate support—leading to the unavoidable conclusion that these allegations were untrue.  *See* Rough Tr. at 4:22–5:6; 18:7–19:5.  That is, as it turns out, Defendants simply did not do these things.  They did not seek a list of those who worshipped at the site, much less a list of those who sought confession.

Incredibly, Plaintiff's own supplemental filings only further suggest that these misrepresentations were made deliberately and in bad faith, rather than in error, as the Chairman of the ATB had addressed Plaintiff's exaggerated accusations as early as June 2025. *See* Dkt. 128-5 at 20 ("THE CHAIRMAN: *You keep repeating 'photography' and 'handling of sacred objects.'* The Board's order is clear that that's not going to happen. *You keep repeating that the assessors moved to compel names of penitents and others seeking spiritual counseling.* There has -- I looked at -- . . . I looked at the docket. In this -- in these appeals, *there's never been such a motion. There's never been such an order*." (emphases added)); *see also id.* at 5–7 ("THE CHAIRMAN: . . . Among those requirements for the inspection were that all areas of the subject property be visible, the appellant may not impose limitations on the attendees of the inspection, and the Board specifically ruled that no objects that the appellant considered sacred were to be touched and any objects that the appellant considered to be sacred could be covered so that photographs could be made of the subject properties without impinging on the appellants' claim of interference with their religious beliefs. So those conditions still stand. *Once again, for reasons that are not clear, the appellant has filed in the U.S. Circuit Court a motion to -- for preliminary injunction which again repeats these same claims about touching religious objects, among other claims. Those claims are just not true. The Board's order is clear that objects that are considered sacred may be covered and may not be touched.* So without going into any further detail on the inaccuracies in that -- those various pleadings, both at the Board and the Circuit Court, Attorney Stockton, I'm going to turn to you to see whether or not the appellant intends to allow the inspection to take place on the conditions that the Board has set.").

Accordingly, and under the circumstances, the Court concludes that Plaintiff's material misrepresentations were intended to mislead the Court into granting extraordinary relief, made

only more problematic by the fact that Plaintiff initially sought to have the Court consider the motion ex parte. The motion is STRICKEN from the record and DENIED. The Court will consider any motion for costs incurred by Defendants in defending against the emergency motion. Should the Court award costs, it will do so against attorney Stockton directly, rather than against Plaintiff, for her failure to uphold the duty of candor. Any motion for costs should be filed within 14 days of the date of this Order.

In addition, the Court notes that even if it were to consider the emergency motion on the merits, it would deny the motion for substantially the reasons set forth by Defendants in their opposition papers, Dkts. 118 and 119. "[T]he issuance of preliminary injunctive relief is 'an extraordinary and drastic remedy that is never awarded as of right.'" *Howe v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr. Series 2016-CTT*, 440 F. Supp. 3d 99, 102 (D. Mass. 2020) (quoting *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). "If the movant 'cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" *Id.* (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). "The court may accept as true 'well-pleaded allegations [in the complaint] and uncontroverted affidavits.'" *C&W Facility Servs. Inc. v. Mercado*, 2018 WL 4854630, at *2 (D. Mass. Oct. 5, 2018) (quoting *Rohm & Haas Elec.*

*Materials, LLC v. Elec. Cirs. Supplies, Inc.*, 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010)). "The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction." *Bos. Taxi Owners Ass'n, Inc. v. City of Bos.*, 84 F. Supp. 3d 72, 78 (D. Mass. 2015) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).  Under the circumstances, and upon review of the filings submitted by the parties, the Court concludes that Plaintiff has failed to establish that the "extraordinary and drastic remedy" of preliminary injunctive relief is warranted.

**So Ordered.**

Dated:  November 5, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court