**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **EGYPT HOUSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-10597-BEM** |
| | ) | |
| **JOHN P. KELLEY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTIONS TO DISMISS**

**MURPHY, J.**

This action arises out of a dispute before the Massachusetts Appellate Tax Board concerning Plaintiff Egypt House's entitlement to tax abatement on religious grounds. Before the Court are Defendants' two motions to dismiss. Dkts. 120, 152. For the reasons set forth below, Defendants' motions will be granted.

I.    **Background**

The Court need not explain in depth every step of this contentious litigation, which has paid visits to state court, federal district and appellate courts, and the state tax board. The factual and procedural background as relevant to the motions currently before the Court are set forth below.

Plaintiff Egypt House sought an abatement of local property taxes under Mass. Gen. Laws ch. 59, § 5, on the ground that it was using its property for religious purposes. The Massachusetts Appellate Tax Board ("ATB"), which hears and decides state and local tax appeals, issued an order permitting an inspection of the property pursuant to Mass. Gen. Laws ch. 58A, § 8A, which

provides that, "[b]efore the hearing of a petition for the abatement of a tax upon real estate, . . . the appellant shall permit the appellee personally or by attorneys, experts or other agents, to enter upon such real estate or upon any premises where such personal property is situated and examine and inspect such real estate or personal property, including any property which the appellant claims is exempt from taxation."

On March 13, 2025, shortly before the inspection was slated to take place, Plaintiff brought suit against, among others, the Town of Marblehead (the "Town"); the Town Administrator; individuals serving as counsel to the Town; the Board of Assessors for the Town (the "Board of Assessors"); current and former members of the Board of Assessors; and the Chairman of the ATB.  Dkt. 110 ("Complaint" or "Compl.").  Subsequently, three Defendants conducted an inspection of Egypt House, which included photography of the rooms, allegedly over the objections of Egypt House clergy.[1]  *Id.* ¶¶ 57–58, 66–67, 69.

On October 14, 2025, Plaintiff filed its fourth amended complaint.[2]  Compl.  The Complaint asserts seventeen counts: violations of 42 U.S.C. § 1983 for deprivation of rights under the First, Fourth, Fifth, and Fourteenth Amendments (Counts 1–7); municipal liability (Counts 8 and 9); violation of 42 U.S.C. § 1985 for conspiracy to deprive Plaintiff of equal protection (Count 10); violation of 42 U.S.C. § 1986 for neglect to prevent conspiracy (Count 11); violation of the Religious Land Use and Institutionalized Persons Act of 2000 (Count 12); violation of the Freedom of Access to Clinic Entrances Act of 1994 (Count 13); deprivation of rights under Part I, articles

---

[1] The three Defendants were John P. Kelley, Todd Laramie, and Matthew D. Provencher.

[2] The Court dismissed the initial complaint for failing to meet the fundamental pleading requirements of Rule 8.  Dkt. 95.  After the Court accepted Plaintiff's first amended complaint, Dkt. 96, and subsequent corrected version, Dkt. 99, Plaintiff improperly filed a third amended complaint, Dkt. 103, in violation of Rule 15(a)(1), which the Court struck from the record, Dkts. 104.  In permitting this fourth amended complaint, Dkt. 110, the Court cautioned that Plaintiff's repeated failures to comply with this Court's filing procedures and orders would result in dismissal, Dkt. 109.

II and III of the Massachusetts Constitution (Counts 14 and 15); impairment of civil rights under

Mass. Gen. Laws ch. 12, § 11I (Count 16); and defamation per se (Count 17).

On October 28, 2025, Defendants Adam J. Costa, Lisa L. Mead, and Matthew D. Provencher (together, "Attorney Defendants") filed a motion to dismiss.  Dkt. 120.  On December 11, 2025, Karen Bertolino, Board of Assessors for the Town, John P. Kelley, Thatcher W. Kezer, III, Todd Laramie, Jonathan Lederman, Douglas E. Percy, Town of Marblehead, Michael Tumulty, William J. Willis (together, "Town Defendants") filed their own motion to dismiss.  Dkt. 152.  A hearing was held on February 5, 2026, and the Court took the motions under advisement.

## II.     Discussion

### A.     Tax Injunction Act

As a threshold matter, Defendants argue that Plaintiff's claims are barred by the Tax Injunction Act of 1937 ("TIA"), which directs that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[3]  28 U.S.C. § 1341; *see also Bank of New Eng. Old Colony, N.A. v. Clark*, 986 F.2d 600, 602 (1st Cir. 1993) (The TIA "is jurisdictional in nature, and therefore serves to oust the federal courts of jurisdiction in those cases which fall within its reach." (internal quotation marks omitted)).

"Since the passage of § 1983, [in 1871,] Congress and this Court repeatedly have shown an aversion to federal interference with state tax administration.  The passage of the [TIA] in 1937 is one manifestation of this aversion."  *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515

---

[3] "For purposes of the TIA, state taxation includes local taxation."  *Peckham v. Bd. of Selectmen*, 2017 WL 2937933, at *5 (D. Mass. Mar. 23, 2017) (citing *Hibbs v. Winn*, 542 U.S. 88, 100 n.1 (2004)).

U.S. 582, 586 (1995); *see also Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365 (2025). The TIA is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981). As the Supreme Court observed, "property tax is by far the most important source of tax revenue for cities and counties" and "[w]e may readily appreciate the difficulties encountered by the county should a substantial portion of its rightful tax revenue be tied up in injunction actions." *Id.* at 527–28; *see also Peckham v. Bd. of Selectmen*, 2017 WL 2937933, at *5 (D. Mass. Mar. 23, 2017) (explaining that the TIA applies to actions seeking injunctive, declaratory, or monetary relief (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103, 113 (1981))). It bears noting that the TIA "divests the district court not only of jurisdiction to issue an injunction enjoining state officials, but also of jurisdiction to take actions that 'suspend or restrain' the assessment and collection of state taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (quoting 28 U.S.C. § 1341).

In enacting the TIA, "Congress was thinking of cases where taxpayers were repeatedly using the federal courts to raise questions of state or federal law going to the validity of the particular taxes imposed upon them." *Wells v. Malloy*, 510 F.2d 74, 77 (2d Cir. 1975); *see also Hibbs v. Winn*, 542 U.S. 88, 107 (2004) (providing that the TIA applies in "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes"). Accordingly, federal courts regularly find that they lack jurisdiction over claims related to the assessment, levy, and collection of taxes, even when plaintiffs raise broader constitutional claims about discrimination. In *Tomaiolo v. Transamerica Corp.*, for example, the court found it had no jurisdiction over a section 1983 suit by property owners who paid property taxes through third parties and alleged that state law requiring those third parties to make annual, rather than quarterly,

tax payments violated property owners' equal protection and due process rights.  131 F. Supp. 2d 280 (D.R.I. 2011), *aff'd as modified*, *Tomaiolo v. Mallinoff*, 281 F.3d 1 (1st Cir. 2022).  The court was unpersuaded by the property owners' arguments that the TIA did not apply because "they [we]re challenging not the property tax itself, but the Town Defendants' improper conduct" or because "they [we]re not challenging [the state law], but seeking the protection offered by that law from defendants' unconstitutional behavior."  *Id.* at 289–90.  The *Tomaiolo* court concluded that the property owners were, in fact, "challenging the constitutionality of a local tax system," which was barred by the TIA.  *Id.* at 290; *see also Marshall v. Town of Middlefield*, 2008 WL 5157753, at *3 (D. Conn. Dec. 5, 2008) (court lacked jurisdiction where parties disputed whether Appellant had paid a prior motor vehicle property tax bill notwithstanding the plaintiff's "attempts to characterize his claims as a challenge to the unequal and malicious treatment he received by Middlefield officials and not as a challenge to the tax itself"), *aff'd*, 360 F. App'x 227 (2d Cir. 2010); *id.* ("Basing a complaint upon alleged violation of civil rights, 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 or of the Federal Constitution will not avoid the prohibition contained in [the TIA].").

On the other hand, claims that do not implicate the assessment, levy, and collection of taxes are not barred by the TIA, even when they concern state tax law.  *See, e.g.*, *Hibbs*, 542 U.S. at 108–11 (holding that the TIA does not bar suit by Arizona taxpayers challenging tax credit for contributions to parochial schools on Establishment Clause grounds because, if successful, the result would be the collection of additional taxes); *Wells*, 510 F.2d at 77 (holding that the TIA did not bar action to enjoin enforcement of Vermont statute suspending the right to operate a motor vehicle for people in default of payment of tax because this statute could only produce tax payments "indirectly through a more general use of coercive power" and therefore did not

constitute tax "collection"). In short, the Court may not consider claims that challenge how state and local governments assess and collect taxes—even those that raise constitutional challenges—but the Court may consider claims the resolution of which would only indirectly implicate the collection or payment of taxes.

The following claims, clothed though they are in claims of religious discrimination and civil rights violations, take issue with the processes by which Town Defendants assessed and levied taxes against Plaintiff and seek federal court interference therein, and thus are barred by the TIA:

*Counts 1 and 2.* Plaintiff's first two claims allege section 1983 violations of the First Amendment. At bottom, however, the claims challenge the denial of a religious tax exemption under Mass. Gen. Laws ch. 59, § 5, and the procedures used to conduct the statutorily authorized inspection. *See, e.g.*, Compl. ¶ 77 ("Defendants violated the Free Exercise Clause by denying [Plaintiff]'s tax exemption based on its Orthodox Catholic religious character while granting exemptions to other religious organizations."); *id.* ¶ 78 ("[Plaintiff] qualified for Commonwealth of Massachusetts tax exemptions under any or all of M.G.L. c. 59, § 5, Clauses Tenth and Eleventh."); *id.* ¶ 80 ("There is no basis at all for Defendants' denial of the requested exemptions and Defendants have provided no reason for their denials."); *id.* ¶ 81 ("Defendants do not have written criteria for their review of tax exemption requests."); *id.* ¶ 83 ("Defendants violated the Free Exercise Clause by forcing photography [during the inspection] that constitutes desecration."); *id.* ¶ 87 ("Defendants treated other similarly situated religious organizations differently from [Plaintiff] when they granted their tax exemptions while denying the same benefits

to [Plaintiff].”); *id.* ¶ 88 (“The attempts by Defendants Provencher and Costa to compel disclosure of confessional communications constitutes an egregious establishment clause violation.”).[4]

*Count 3.*  Plaintiff brings a section 1983 claim alleging that Town Defendants violated Plaintiff’s Fourth Amendment right to privacy “by conducting an unreasonable search that exceeded the scope of lawful tax assessment inspection.” *Id.* ¶ 90.  Like Counts 1 and 2, this claim centers on the process by which state officers evaluated Plaintiff’s eligibility for a tax abatement.

*Count 4.*  Plaintiff brings a section 1983 claim alleging that Town “Defendants effectuated a taking by depriving [Plaintiff] of its rightful exemption while granting exemptions to similarly situated properties.” *Id.* ¶ 94.  Plaintiff may not clothe a claim about the denial of a state tax exemption in Fifth Amendment taking language to sidestep the TIA bar.

*Count 5.*  Plaintiff brings a section 1983 claim alleging that Town “Defendants grant tax exemptions to religious organizations operating commercial enterprises within exempt structures, while denying exemptions to [Plaintiff] based solely on its Orthodox Catholic religious character,” thereby violating Plaintiff’s rights under the Equal Protection Clause. *Id.* ¶ 101.  Like Counts 1 and 2, discussed above, this claim impermissibly challenges the denial of a religious tax exemption.

*Count 6.*  Plaintiff brings a section 1983 claim alleging that Town Defendants violated Plaintiff’s right to procedural due process.  *Id.* ¶ 109.  Plaintiff again takes issue with the procedures by which Town Defendants evaluate applicants for tax exemptions on religious grounds, alleging that “Defendants’ determinations were made without any meaningful process whatsoever; determinations were made on a discretionary basis without any reference to any

---

[4] The allegations in paragraphs 83 and 88 of the Complaint were later disclaimed and resulted in Plaintiffs’ motion for emergency relief, Dkt. 115, being stricken from the record, Dkt. 129, and the imposition of attorney fees against Plaintiffs, Dkt. 144.

objective criteria; in this instance, determinations were made solely based upon [Plaintiff's] disfavored religious affiliation." *Id.* ¶ 110. Such claims are barred by the TIA.

*Counts 8 and 9.* Plaintiff alleges violations of section 1983 under a theory of municipal liability because the Board of Assessors' "decisions to deny [Plaintiff's] exemption while granting others' represents official municipal policy." *Id.* ¶ 119. Plaintiff points, specifically, to the Town's practices related to inspecting Plaintiff's premises and the Town's "refus[al] to follow the practice of other Massachusetts municipalities that accommodate identical religious restrictions." *Id.* ¶ 120. Plaintiff argues alternatively that liability is established through a "pattern and practice of Defendants in coordinating the systematic violation of Plaintiff's rights to practice its faith in accordance with its beliefs." *Id.* ¶ 122. These, too, are barred by the TIA because they challenge the denial of the tax abatement and the associated procedures and practices.

*Counts 14 and 15.* Plaintiff alleges in Count 14 that Defendants' "refus[al] to recognize the religious organization exemption from taxation" "impaired [Plaintiff] from serving its religious purpose" in violation of Part I, article II of the Massachusetts Constitution. *Id.* ¶¶ 159–60. Plaintiff likewise alleges in Count 15 that Defendants coerced Plaintiff into desecrating its chapel during the statutorily authorized inspection and favored other religions over Orthodox Catholicism, in violation of Part I, article III of the Massachusetts Constitution. *Id.* ¶¶ 164–65. These claims are barred for substantially the same reasons as Counts 1 and 2.

*Count 16.* Plaintiff alleges that Defendants Provencher and Costa took actions to "compel disclosure of confessional communications [which] constitutes threats and intimidation designed to chill religious exercise" in violation of the Massachusetts Civil Rights Act. *Id.* ¶ 169; *see* Mass. Gen. Laws ch. 12, § 11I. Any information Defendants sought was, again, part of Defendants'

statutorily authorized efforts to inspect Plaintiff's property and determine eligibility for a tax abatement.[5]

At bottom, Plaintiff, who proactively sought a tax abatement on religious grounds under state law, takes issue with the procedures used to determine eligibility and the outcome of that application. Adjudicating any one of these claims would require that this Court weigh in on the scope and propriety of procedures used by municipal actors to evaluate eligibility for state tax exemptions. Were Plaintiff to prevail, this Court would necessarily be forced to "take actions that suspend or restrain the assessment and collection of state taxes," which runs squarely in the face of the TIA. *Grace Brethren Church*, 457 U.S. at 408 (internal quotation marks omitted).

Finally, this Court has no reason to doubt that a "speedy and efficient remedy" is available in Massachusetts courts. 28 U.S.C. § 1341. Indeed, ATB rulings are subject to appellate review by the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court. Mass. Gen. Laws ch. 58A, § 13. Accordingly, the TIA bars this Court from exercising jurisdiction over Counts 1–6, 8, 9, and 14–16.[6]

### B.    Failure to State a Claim

For the remaining claims, this Court must determine whether Plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 12(b)(6). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or

---

[5] Moreover, the Court struck Plaintiff's ex parte emergency motion seeking to, inter alia, "prevent Defendants from compelling disclosure of the names of worshippers, pilgrims, and penitents," Dkt. 115, because of "material misrepresentations to the Court," Dkt. 129 at 1. Namely "as it turns out, Defendants simply did not . . . seek a list of those who worshipped at the site, much less a list of those who sought confession." *Id.* at 2.

[6] Even were these claims not barred by the TIA, they are barred by principles of comity because they challenge the validity of a local tax system in federal court. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115–16 (1981).

9

susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

*Count 7.*   Plaintiff alleges that Defendants violated Plaintiff's substantive due process rights.   Compl. ¶¶ 111–16.   "[C]onscious-shocking conduct is an indispensable element" when making a claim under substantive due process, which "functions to protect individuals from particularly offensive actions on the part of government officials."   *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (citation omitted).   "In order to shock the conscience, conduct must at the very least be extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable."   *Id.* (cleaned up).   Even assuming Plaintiff's allegations that Defendants used state power to discriminate against Plaintiff on religious grounds are true, Compl. ¶¶ 115–16, "[s]ubstantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision."   *Pagan*, 448 F.3d at 33.

*Counts 10 and 11.*   Plaintiff alleges that a subset of Defendants engaged in a conspiracy in violation of 42 U.S.C. §§ 1985 and 1986.   Compl. ¶¶ 124–31.   A claim for conspiracy under section 1985 requires "plausibly alleg[ing] facts indicating an agreement among the conspirators to deprive the plaintiff of [its] civil rights."   *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019). "Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss."   *Alston v. Spiegel*, 988 F.3d 564, 578 (1st Cir. 2021).   Plaintiff's allegations that certain Defendants were in "consistent communication during the period at issue and worked

cooperatively to discriminate against [Plaintiff]," Compl. ¶ 126, are precisely the kind of vague and conclusory allegations that cannot survive.  Because a viable section 1985 claim is a prerequisite to a section 1986 claim, Plaintiff's section 1986 claim (Count 11) must also be dismissed.  *See Hahn v. Sargent*, 523 F.2d 461, 470 (1st Cir. 1975).

*Count 12.*  Plaintiff next alleges a violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which "prohibits local governments from 'impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution,' outside of narrow circumstances."  *St. Paul's Found. v. Ives*, 29 F.4th 32, 39 (1st Cir. 2022) (quoting 42 U.S.C. § 2000cc(a)(1)).  Plaintiff alleges that "Defendants substantially burdened Egypt House's religious exercise through the individualized assessment and collection of real estate taxes on Egypt House, as well as by publicly creating negative associations about the Orthodox Catholic faith through official press releases and malicious behavior by its elected officials, employees, and volunteers," Compl. ¶ 136.

As an initial matter, Plaintiff has not alleged that Defendants imposed any land use regulation.  *See* 42 U.S.C. § 2000cc-5(5) (defining "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land)").  An assessment for a tax exemption does not dictate the permissible use of the land; it is merely a determination of *how the land is already being used*.[7]  *See St. Paul's Found. v. Baldacci*, 540 F. Supp. 3d 147, 152–53 (D. Mass.

---

[7] In opposing Defendants' motion to dismiss, Plaintiff argues that "[t]he claims challenge conditions imposed during the assessment, not the assessment itself."  Dkt. 171 at 13.  But "conditions imposed during the [tax] assessment" are not a regulation at all and are even further removed from "a zoning or landmarking law" under RLUIPA.  Moreover, a challenge to the conditions of the tax assessment would run afoul of the TIA.  *See supra* Section II.A.

2021) ("Courts that have addressed the issue generally hold that a 'government agency implements a "land use regulation" only when it acts pursuant to a "zoning or landmarking law" that limits the manner in which a claimant may develop or use property in which the claimant has an interest.'" (citations omitted)) (collecting cases), *aff'd on other grounds sub nom.*, *St. Paul's Found. v. Ives*, 29 F.4th 32 (1st Cir. 2022).[8]   But even if the Court were to consider either the assessment or the tax exemption a land use regulation, Plaintiff's conclusory allegations—that Town Defendants' denial of the tax exemption and creation of "negative public associations" "threatens the continued existence of Egypt House," Compl. ¶ 136–37—fail to demonstrate a substantial burden.  *See Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 111 (1st Cir. 2020) (discussing factors relevant to "whether a particular regulation imposes a substantial burden"); *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("[The challenged provisions] do not render impracticable the use of real property . . . for religious exercise . . . That [plaintiffs] expended

---

[8] Plaintiff also references RLUIPA's anti-discrimination provision, Compl. ¶ 135, alleging that "Defendants discriminated against Egypt House by subjecting it to taxation while allowing denominationally favored churches absolute exemption," *id.* ¶ 138.  In its opposition, however, Plaintiff only defends its allegations as to substantial burden. Dkt. 171 at 12–13.  Regardless, the Court concludes that Plaintiff fails to plausibly allege a violation of this provision for the same reasons as the substantial burden provision: Plaintiff has not alleged that Defendants imposed any land use regulation.  *See* 42 U.S.C.A. § 2000cc(b)(2) ("No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.").

Additionally, Plaintiff alleges as part of its RLUIPA claim that "Defendants Board of Assessors . . . refuse to change the use designation [from the Massachusetts State Building Code] to reflect the correct use and occupancy because of Egypt House's disfavored religious affiliation."  Compl. ¶ 146.  But this provision of the building code does not constitute a "land use regulation," and Plaintiff has not alleged that Defendants' actions related to the building code sought to limit Plaintiff's religious exercise in any way.  *See id.* ¶¶ 146–47; *Baldacci*, 540 F. Supp. 3d at 153–54 ("[Plaintiff] has not alleged sufficient facts to suggest that the Town functionally utilized its building permit process, or the interim code review imposed by [defendant], to make its zoning decisions or that the process was disingenuously used to limit or prohibit [plaintiff] from using the Property as intended.").

12

considerable time and money so to do does not entitle them to relief under RLUIPA's substantial burden provision.").[9]

*Count 13.* Plaintiff alleges a violation of the Freedom of Access to Clinic Entrances ("FACE") Act. As relevant here, the FACE Act prohibits use of "force or threat of force or . . . physical obstruction" intended to "injure[], intimidate[], or interfere[] with" the exercise of "First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2). The statute specifically defines "intimidate" as "placing a person in reasonable apprehension of bodily harm to him- or herself or to another." *Id.* § 248(e)(3). Plaintiff contends that Defendants' "refus[al] to discuss necessary procedural guidelines in connection with Defendants' . . . site inspection that would have enabled the inspection to be narrowly tailored to respect the requirements of Orthodox Catholic canon law" constitutes "force and intimidation" and that "Defendants use[d] force and intimidation to interfere with religious exercise at Egypt House by threatening property seizure, unless Egypt House submitted to religious desecration." Compl. ¶¶ 151–52. But the alleged misconduct—namely, "forced photography" and "inspection of consecrated space," *id.* ¶¶ 156–57—falls far short of the statutory requirements. Because Plaintiff has failed to allege that Defendants attempted to "interfere with" Egypt House's religious freedom "by force or threat of force or by physical obstruction," Count 13 is dismissed.

---

[9] Neither requiring a tax assessment to receive a tax exemption nor denying said tax exemption for failing to allow the assessment can be said to "substantially burden" Plaintiff's religious exercises. *See Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 99 (1st Cir. 2013) ("[T]he mere existence of some expenses does not put 'substantial pressure on [the religious institution] to modify its behavior'" (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013))); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) ("'[S]ubstantial burden' requires something more than an incidental effect on religious exercise."); *Stuart Circle Parish v. Board of Zoning Appeals of Richmond*, 946 F. Supp. 1225, 1237 (E.D. Va. 1996) ("It is well established that there is no substantial burden placed on an individual's free exercise of religion where a law or policy merely 'operates so as to make the practice of [the individual's] religious beliefs more expensive.'" (quoting *Braunfeld v. Brown*, 366 U.S. 599, 605 (1961) (plurality opinion))).

*Count 17*.  Plaintiff brings a claim for defamation per se, which requires demonstrating "(1) that the defendant published a false statement about him to a third party and (2) that the false statement either caused the plaintiff economic loss or was of the type that is actionable without proof of economic loss." *R.I. Seekonk Holdings, LLC v. Hines*, 425 F. Supp. 3d 37, 47 (D. Mass. 2019) (cleaned up).  "Of relevance here is the principle that a statement normally is not actionable unless it contains an objectively verifiable assertion." *Id.* (internal quotation marks omitted); *see also Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 339 (1st Cir. 2022).   Here, Plaintiff alleges that Defendant Tumulty called Father Andrew "Friar Tumma Tumulty" and a "fake monk," Compl. ¶¶ 70–71, neither of which "contains an objectively verifiable assertion," *R.I. Seekonk*, 425 F. Supp. 3d at 47; *see also Van Liew v. Eliopoulos*, 92 Mass. App. Ct. 114, 120 (2017) ("If a challenged statement is plainly an opinion or subjective view, rather than a statement of fact, it is not actionable as a matter of law.").  Count 17 must therefore be dismissed.

## III.    Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.


**So Ordered.**

/s/ Brian E. Murphy

Brian E. Murphy

Dated:  April 3, 2026                Judge, United States District Court